*In re* MARRIAGE OF STANLEY T. KUSPER, Petitioner-Appellee, and EVELYN KUSPER, Respondent-Appellant.

First District (4th Division)   No. 1—88—1785

Opinion filed February 22, 1990.—Rehearing denied April 26, 1990.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Howard A. London, of counsel), for appellant.

Schiller, Du Canto & Fleck, Ltd., of Chicago (Donald C. Schiller and Sarane C. Siewerth, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The trial court entered a judgment dissolving the marriage of Stanley and Evelyn Kusper. The court denied Evelyn's post-trial motion for reconsideration, and she follows with this appeal. Evelyn is contesting the amount of the maintenance award, the court's disallowance of her exhibit into evidence, and the order of the court directing her to pay one-half of her attorney fees. She is not contesting the property award.

At the time the court ordered the dissolution of their marriage, March 16, 1988, Evelyn Kusper was 50 years old and Stanley was 53 years old. They had been married since November of 1958 and had three adult sons. Evelyn has not worked outside the home since her children were born. In 1986, she received a degree of bachelor of arts psychology, social welfare. It is Evelyn's intention to pursue a master's degree in social work. She testified that she could complete the master's degree in three years of part-time coursework. According to Evelyn, after she obtains a master's degree, if she finds employment, she will probably be able to earn $18,000 to $19,000 per year. Stanley's income, as stated in the parties' income tax returns for the years 1981 to 1986, ranged from $92,771 to $131,163 for 1986. There is no testimony specifying the amount of Stanley's income for 1987; however, Stanley testified that 1987 was an extraordinarily profitable year for his law firm.

The court awarded each of the parties approximately one-half of the marital assets. Evelyn's share of the stipulated value of the property award was approximately $594,000. Included in Evelyn's award were the marital home unencumbered by mortgage, the home furnishings, and approximately $327,000 in investable income. Evelyn's award also included $18,000 in nonmarital assets. The court awarded Evelyn $500 per month of maintenance for a period of 36 months for the purpose of completing her education.

Evelyn asserts that in determining her maintenance award, the court underestimated her expenses and overestimated her income.

Evelyn proposes that the appropriate maintenance is $60,000 a year, reviewable after five years. The court directed Evelyn to pay one-half of her attorney fees, a finding Evelyn also contests on appeal.

In consideration of the maintenance award, the parties each offered testimony relating to marital and Evelyn's personal expenses for the years 1984 through 1987, taking into account Stanley's move from the marital residence in February of 1986. Stanley admitted that his testimony did not present a complete summary of Evelyn's expenses as he was not aware of expenditures in certain categories which Evelyn paid for in cash. The total amount of expenses Stanley testified to for Evelyn varies between $14,923 to $17,914 per year. Stanley's argument is that taking everything into account, Evelyn's annual expenses during the marriage did not exceed $20,000 per year.

Evelyn's testimony included expenses Stanley did not testify to. Evelyn attests that in 1986, in addition to the sums Stanley testified to, she had to spend $6,825 from an inheritance in order to pay bills and living expenses. When Evelyn's additional expenses are added to the expenses Stanley testified to, her expenditures for the years 1985 and 1986 total $24,421 and $24,233, respectively. Evelyn testified that she incurred some expenses that she paid for with cash and for which she has no receipts or statements.

Evelyn also testified to certain anticipated needs which she has been unable to afford. Evelyn indicated the house that she received as part of the property settlement was in need of certain repairs, including a new furnace and a new roof, plumbing repairs, and furniture and carpet replacement. Additionally, Evelyn anticipates a heretofore unnecessary need for professional clothing once she embarks on her further education and career. Evelyn testified that tuition expenses to obtain her master's degree will be approximately $10,000 per year for three years.

The parties also testified that during the marriage, Stanley's medical insurance covered Evelyn's medical expenses and that dental care was provided by a family friend. Evelyn will no longer be a party to Stanley's insurance policy, and she is uncertain whether Stanley's friend will still provide her with dental care. Up until a few years ago, Evelyn accompanied Stanley on a regular basis to the family vacation spot in Michigan. Stanley's father left the vacation home to Stanley, and it was awarded to him as nonmarital property in the judgment of dissolution. Similarly, the family possessed season tickets to Bears games that were awarded to Stanley in the settlement. Evelyn testified that up until the time the marriage began to disintegrate, she enjoyed going to the games with Stanley. The parties also testified they

had lived a frugal life that had enabled them to accumulate savings.

Evelyn presented to the court an exhibit in the form of an affidavit summarizing in specific amounts the expenses she expects to incur in lieu of or in addition to those incurred during the marriage. Evelyn contends that the trial court erred in refusing to allow the introduction of her exhibit into evidence.

■ ■ Whether evidence is to be admitted is a matter largely within the discretion of the trial court, and the court's decision will not be reversed unless such discretion is clearly abused. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) In the present case, Evelyn did not testify to many of the amounts or categories included in the exhibit but relied solely on the exhibit as evidence of her reasonable needs in these categories. Evelyn had the opportunity to testify in detail about her reasonable needs, and as she points out, she was "clearly competent" to testify to the items set forth in the exhibit. Evelyn was not prejudiced by the trial court's exclusion of the affidavit. We do not believe the trial court abused its discretion in disallowing the exhibit.

■ Evelyn has investable income of approximately $327,000. Stanley argued to the trial court that if Evelyn invested this amount at 8% interest, she would be able to earn investment income of at least $23,840 a year. Included in Evelyn's investable income is her share of a note receivable that the court distributed as part of the marital property settlement. The receivable, known as the Cummings note, is a secured promissory note with a guaranteed 15% rate of annual interest. At the time of trial, the note had been overdue since February 11, 1985. The parties stipulated to the value of the note. Evelyn's share comes to approximately $170,000. As of the time of her post-trial motion, Evelyn had not received any payment from the note. In her post-trial motion, and here on appeal, Evelyn argues that because she is unable to collect on the Cummings note, the court should not include the value of the note in calculating her annual investment income for the purposes of determining maintenance. Evelyn calculates that without the Cummings note, her investment income will be $12,489 per year.

We do not believe there is any error in including the value of the Cummings note in estimating Evelyn's investable income for the purpose of determining maintenance. At the time of trial Evelyn was aware that the Cummings note was overdue, and the debtor company in bankruptcy, yet she did not raise with the trial court the issue of the unavailability of this asset. Further, between the close of the proofs and the announcement of the court's decision, Stanley offered

to either buy out Evelyn's share of the note over six months at 8% interest, or pay Evelyn 8% on her share until the bankruptcy court released the funds. At the time Stanley made these offers, Evelyn rejected both proposals. In her post-trial motion, however, she suggested a similar settlement option. Under the circumstances outlined, we do not believe it was error for the trial court to include the Cummings note in calculating Evelyn's investment income.

In addition to her investable income, Evelyn will also be in a position, once she completes her master's degree, to earn wages. Evelyn testified that once she completes her coursework, if she finds employment, she will probably earn $18,000 to $19,000 a year.

■■ ■ We believe that the trial court fairly considered Evelyn's income; however, we do not believe the court gave sufficient consideration to Evelyn's testimony regarding her reasonable needs. Evelyn testified to specific amounts expended during the marriage in several categories Stanley did not mention, including medical, social, vacation, and home repair, as well as additional amounts for categories Stanley did testify to. Evelyn also stated in her testimony that she anticipated expenses which she is presently unable to afford, most notably some major household repairs. Evelyn also testified that she expected to incur increased clothing costs once she embarked on the pursuit of a career. Further, Evelyn testified that she had been included in Stanley's medical insurance coverage, dental care had been provided free of charge by a friend of Stanley's, and the family vacations had consisted of trips to Stanley's vacation property in Michigan. Thus, some of Evelyn's expenses during the marriage were met through sources she has not retained.

Both of the parties testified that their frugal standard of living had allowed them to save capital for the future. Inasmuch as the standard of living during the marriage is to be considered when the court makes an award of maintenance (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336), we believe, as Evelyn has argued, that investing in future security can be considered an element of the marital lifestyle. Finally, Evelyn testified that it would take her three years to complete coursework for a master's degree at a cost of approximately $10,000 per year for three years.

Considering all of these factors, and the criteria outlined in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 504(b)): the duration of the marriage, the age and physical and emotional condition of the parties, the standard of living established during the marriage, the ability of the spouse from whom maintenance is sought to meet his needs while meeting

the needs of his spouse, the financial resources of the party seeking maintenance, and the ability of the spouse seeking maintenance to meet his own needs, we do not believe the trial court awarded Evelyn an adequate amount of maintenance. We believe that the maintenance award for Evelyn should be modified to $1,200 per month, or $14,400 per year.

■ We also believe that the three-year duration limitation the trial court placed on Evelyn's award does not allow her time to become self-sufficient. As a general rule, limitations on maintenance awards serve the purpose of encouraging the recipient spouse to use diligence in procuring self-sufficiency. (*In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338, 461 N.E.2d 447.) Evelyn testified that after she obtained a master's degree, which would take her three years, if she found employment in the field, she could probably earn $18,000 to $19,000 per year. Due to her age and absence from the work force, we believe that even with diligence, Evelyn may not find immediate employment after she graduates. We therefore modify Evelyn's maintenance award to last for a period of five years to give her time to become self-sufficient.

■ The trial court ordered Evelyn to pay one-half of her attorney fees. We do not dispute the court's findings as to the reasonableness or necessity of the fees; however, we modify the order so that Stanley will be responsible for the full amount of Evelyn's attorney fees. We do not believe that Evelyn has the financial ability to pay her half, $22,204, of the fees as ordered. Her investment income will be approximately $24,000 per year. She will receive another $14,400 per year in maintenance. Evelyn's annual expenses are over $24,000 per year, and her tuition for three years will be approximately $10,000 per year. If Evelyn is required to pay attorney fees, she will have to deplete part of her principal. A spouse need not sell her assets in order to pay attorney fees. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 471 N.E.2d 1008.) Accordingly, we believe the trial court's order should have required Stanley to pay all of Evelyn's attorney fees.

■ Finally, we address Stanley's argument that Evelyn has waived her right to prosecute this appeal because she has chosen to accept the benefits of the property settlement portion of the judgment. The general rule in Illinois is that a litigant cannot attack a decree after enjoying its benefits if, were the judgment reversed on appeal, the opposing party would be at a disadvantage. (*Lemon v. Lemon* (1958), 14 Ill. 2d 15, 150 N.E.2d 608.) Stanley argues that because the financial elements of a judgment for dissolution are so inti-

mately connected, any action on the maintenance issue would affect the property award. Stanley concludes that because he has substantially complied with the property judgment, any change in that award would greatly prejudice him. We note, however, that Evelyn's assignment of error applies exclusively to the maintenance and attorney fees portion of the judgment. She does not dispute the property settlement award. Further, in awarding the property, the trial court relied on Stanley's proposal for an equitable division of the marital property. Stanley has not cross-appealed the court's judgment. As neither party is contending that Evelyn receive less than the amount of property awarded to her, we do not believe that Stanley can be disadvantaged by our decision to allow Evelyn to go forward with this appeal.

For the foregoing reasons, we modify Evelyn's maintenance award to $1,200 a month for five years and order Stanley to pay the full amount of Evelyn's attorney fees.

Reversed in part; affirmed in part as modified.

JOHNSON and LaPORTA, JJ., concur.