THOMAS CLARK, Plaintiff-Appellee, v. DOROTHY CLARK, Defendant-Appellant.

Third District    No. 3—91—0763

Opinion filed November 17, 1992.

Marcia F. Straub, of Peoria, for appellant.

A. Lou Benassi, of Benassi & Benassi, of Peoria, and J. Brian Heller, of Washington, for appellee.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

In a post-dissolution of marriage proceeding, Dorothy Clark appeals from an order of the circuit court of Peoria County reducing her monthly maintenance from $1,100 to $750 while extending it for 12 months.

This appeal had its origin in the 1987 dissolution of the marriage of Thomas Clark, then age 48, and Dorothy Clark, then age 46, after 30 years of marriage. The parties' three children had reached adulthood. Thomas and Dorothy entered into a marital settlement dividing their as-

sets so that 40% (valued at $192,200) went to Thomas and 60% (valued at $293,500) went to Dorothy. Dorothy's share included the marital home, debt free, valued at $105,000 as well as furnishings worth $14,680 and a 1986 Cadillac automobile valued at $16,765. The remaining property awarded to Dorothy was valued at $157,000 and consisted of investments in shares of stock, savings accounts, a bond fund, and an IRA account.

The parties also agreed that Thomas would pay Dorothy rehabilitative maintenance of $1,100 per month until the first of the following occurs: (a) death of Dorothy; (b) death of Thomas; (c) remarriage of Dorothy; (d) cohabitation of Dorothy with an unrelated adult male for more than 10 consecutive days; (e) "The passage of thirty-six (36) months, at which point a court of competent jurisdiction shall review the issue of whether or not Dorothy shall receive any further maintenance."

Thomas paid the agreed maintenance for precisely 36 months and then stopped. On December 7, 1990, Dorothy filed a petition for review of the maintenance award in which she requested an increase in maintenance retroactive to the last payment made.

The evidence introduced at the hearing on Dorothy's petition disclosed that Dorothy had not worked full time since 1977. Prior thereto, she had held numerous secretarial positions and had obtained an associate's degree in business administration from Illinois Central College in East Peoria. After the divorce, Dorothy sought employment as a secretary without success. When asked during cross-examination to name the places where she had applied for jobs, she could only recall four or five names, even after being allowed to refresh her recollection by looking at several pages of notes.

In the spring of 1990, she enrolled at Sangamon State University to pursue a bachelor's degree in business management. At the time of the hearing in April of 1991, Dorothy had 86 credit hours toward the 120 hours required for a degree. During the four terms she had attended Sangamon State prior to the hearing, she had been enrolled as a full-time student only once.

According to Dorothy's 1990 income tax return, she had no earned income, but she did have interest and dividends totalling $6,382 plus alimony received of $11,000. (In previous years her annual alimony was $13,200.) Dorothy testified that her monthly living expenses amounted to $3,259, that she had purchased a house as rental property for $7,000 but had received no income to date, and that she had purchased a ring on credit for $17,000 shortly before the hearing. In addition, during 1990 she took three vacations: one to Jamaica, one to Las Vegas, and one a cruise. She also testified that the real estate taxes on her home

were overdue, that she was two months behind on her health insurance premiums, and that she had other unpaid bills.

When questioned about various transfers of investment assets since the divorce, Dorothy often could not remember dates or amounts or the purpose of various transactions. However, she was not allowed to look at any papers to refresh her recollection of those transactions.

Dorothy's financial statement introduced at the hearing listed her bank accounts and investments as valued at $125,462. These assets are in addition to her residence, rental house, household goods, and car. She also listed debts totalling $29,042, including most of the purchase price of the recently purchased ring and $1,666 shown as owed to Clyde Bridgeman for "balance of investment." During cross-examination, she admitted that she forgot to list the ring and the Bridgeman investment of $3,333 as assets.

Thomas is the manager of a cable television company with a total annual income in 1990 of $83,656. In 1987 at the time of the dissolution of marriage, his income was about $64,000 annually. The evidence indicated that the value of his assets has increased by $91,000 and that his monthly living expenses are about $4,000, excluding his maintenance payments.

The trial court found that Dorothy failed to establish that she had made substantial efforts to obtain gainful employment or to complete training or education so that she could be self-supporting, and also that she had not given attention to her assets. The court found Dorothy can become self-supporting with "a modest amount of further effort and time" spent in furthering her education, seeking employment, and marshaling and managing her present assets. The court then awarded her monthly maintenance of $750 for 12 months to begin on the date of the order.

Dorothy filed a handwritten *pro se* motion to reconsider, and Thomas filed a motion to dismiss the motion to reconsider. The trial court denied both motions, and this appeal followed.

Dorothy's first contention on appeal is that the trial court erred in reducing her monthly maintenance from $1,100 to $750 when the evidence clearly established that her monthly expenses are about $3,000 and that she is attempting to prepare herself for full-time employment. Dorothy insists that section 504(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 504(b)) entitles her to maintain the standard of living enjoyed during marriage (see *In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336) and, furthermore, that she is not required to sell her assets or capital in

order to maintain that standard of living. See *In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 507 N.E.2d 891.

■ This contention might be more persuasive if Dorothy had introduced evidence establishing her standard of living during the marriage. The record contains no evidence as to what she spent for vacations, food, clothing, entertainment, or other expenditures during the marriage. Thus, there is no bench mark which a court can use to determine whether Dorothy is now unable to afford things she formerly enjoyed.

Dorothy also argues that, when the court ruled that she can become self-supporting with a modest amount of effort, it ignored her testimony that she had sought employment without success and that she has been pursuing a college degree. Dorothy contends that her age and years away from the work force must be taken into account and that she needs time to obtain an MBA so as to increase her ability to earn a higher income. See *In re Marriage of Kusper* (1990), 195 Ill. App. 3d 494, 552 N.E.2d 1023 (where the wife was allowed five years of maintenance).

The standard of appellate review is simply that a trial court's award of maintenance will not be overturned unless the court's judgment was against the manifest weight of the evidence, thus demonstrating an abuse of discretion. (*In re Marriage of Courtright*, 185 Ill. App. 3d 74, 507 N.E.2d 891.) This court has held that, where a spouse receiving maintenance failed to make a reasonably diligent attempt to complete a college degree so as to be financially independent, and also failed to seek employment diligently, it was not an abuse of discretion to terminate maintenance payments. *In re Marriage of McGory* (1989), 185 Ill. App. 3d 517, 541 N.E.2d 801.

■ Here, Dorothy's testimony concerning her assets, liabilities, investments, expenses, job search, and educational plans included many vague and unclear, contradictory answers. She invested in a rental home but has collected no rent. She has recently purchased carpet costing more than $7,000 and a ring costing $17,000, but is delinquent in such important expenses as real estate taxes and health insurance. She began her unsuccessful job search in 1987 but did not enroll in college until 1990, and then attended on a part-time basis for three out of four terms. The trial court did not abuse its discretion in concluding that she has managed her income and assets in an improvident manner and that she has not been diligent in seeking employment or further education. The reduction in maintenance was not error.

Dorothy also contends that it was error to refuse to make the reduced maintenance payments retroactive to the date Thomas stopped paying maintenance under the settlement agreement. It is her position that the original maintenance order was for 36 months, subject to review by either party, and that the court's determination that Dorothy was entitled to additional maintenance should have included the seven-month interim period during which Thomas made no payments. In other words, if she was entitled to maintenance, she should have been awarded continuous payments. Thomas, on the other hand, contends that maintenance would terminate after 36 months unless Dorothy sought review of the award.

■ The determination that Dorothy's additional year of maintenance should begin on the date of the order, not the date the original three years of maintenance expired, was also a matter properly within the discretion of the trial court. Considering Dorothy's available resources, we cannot say that the trial court abused its discretion in providing that the additional maintenance would be prospective only.

Accordingly, we affirm the order of the circuit court of Peoria County.

Affirmed.

McCUSKEY and SLATER, JJ., concur.