676 So.2d 483 (1996)
Jack J. MESSINA, Appellant/Cross Appellee,
v.
Mary Elizabeth MESSINA, Appellee/Cross Appellant.
No. 95-1929.
District Court of Appeal of Florida, First District.
June 19, 1996.
Rehearing Denied July 31, 1996.
Louis K. Rosenbloum of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, *484 P.A., Pensacola, and M.J. Menge of Shell, Fleming, Davis & Menge, Pensacola, for appellant/cross appellee.
Keith A. McIver of James L. Chase & Associates, P.A., Pensacola, for appellee/cross appellant.
WOLF, Judge.
The husband appeals and the wife cross appeals from a final judgment of dissolution of marriage. We affirm the well-reasoned order of the trial court in all respects, and find only one issue worthy of discussion: Whether the trial court abused its discretion by considering the amount of money saved by the parties for retirement when calculating the reasonable amount necessary for the former wife to maintain herself in the lifestyle established during the marriage. Under the circumstances of this case, we find that the trial court did not abuse its discretion.
The trial court made the following general factual findings which are supported by the record.
1. The parties were married on February 19, 1972.
2. At the time of the final hearing, the Petitioner/Wife was forty-six (46) years of age and the Respondent/Husband was fifty-two (52) years of age.
3. There were two (2) children born of this marriage. Both children have reached the age of majority.
4. Throughout the term of the marriage, the Respondent/Husband has been a physician, first completing his surgical residency and then practicing as a cardiovascular surgeon in a variety of employment settings.
5. The Petitioner/Wife earned a baccalaureate degree before the marriage and, while she has been employed and self-employed, her jobs have been sporadic, of relatively short length, and not progressive.
6. The parties have followed the traditional division of labor within their marriage, with the Respondent/Husband being the principal breadwinner and the Petitioner/Wife the primary homemaker.
7. The parties moved at least seven (7) times during the marriage to pursue career opportunities for the Respondent/Husband, with the last move to Pensacola, Florida in September of 1988.
The court specifically reviewed the statutory factors pertaining to alimony (section 61.08(2), Florida Statutes), and made specific findings related to all the statutory factors.
The trial court found that the parties established a reasonably lavish lifestyle, and had a net worth that exceeded one million dollars. As to the employment experience and opportunities of the parties, the court found,
The Respondent/Husband is board certified in general and thoracic surgery. The Petitioner/Wife earned a baccalaureate degree in history before the parties' married. She has some experience in real estate and owned a business for two and one-half (2½) years while in New York. She has not worked outside the home since moving to Pensacola.
As to potential income sources, the trial court found,
G. All sources of income available to either partyThe Respondent/Husband is a cardiovascular surgeon. While the income of the marriage in the early years was comparatively modest, the income in the later years was sizeable. In one (1) year in New York, the Respondent/Husband made between One Million Dollars ($1,000,000.00) and One Million Five Hundred Thousand Dollars ($1,500,000.00). When the parties first arrived in Pensacola, the Respondent/Husband earned between Twenty-Four Thousand Dollars ($24,000.00) and Twenty-Seven Thousand Dollars ($27,000.00) a month. The Respondent/Husband testified that his 1993 income was an aberrationthrough September 30th he grossed about Three Hundred Fifteen Thousand Dollars ($315,000.00) *485 However, the Respondent/Husband's 1992 gross income for the first eight (8) months as an associate or employee was Three Hundred Forty-Six Thousand One Hundred Fourteen Dollars and Fifty-Nine Cents ($346,114.59) and for the remaining four (4) months as a partner in the Watson Clinic of Two Hundred Ten Thousand Seventh-One Dollars ($210,071.00) for a total 1992 gross income of Five Hundred Fifty-Six Thousand One Hundred Eighty-Five Dollars and Fifty-Nine Cents ($556,185.59).
The Respondent/Husband projects his 1994 gross income at Four Hundred Twenty-Eight Thousand Dollars ($428,000); although his August 1994 Financial Affidavit lists Five Hundred Seventy-Two Thousand Dollars ($572,000.00) presumably annual income from his partnership.
The Petitioner/Wife's optimum income is between Ten Thousand Dollars ($10,000.00) and Seventeen Thousand Dollars ($17,000.00). There was no evidence to impute that income to her.
Even with the significant assets distributed to the Petitioner/Wife, she will not be able to maintain a similar standard of living on her potential income. While the parties separately may not be able to maintain the same standard of living enjoyed mainly by the Petitioner/Wife since the Respondent/Husband's move to Lakeland in September of 1990, neither may either party be required to move to comparative poverty or unrivaled luxury.
The trial court specifically reviewed the expenses of the parties and noted that historically the parties had invested money for future income, including a $2,500 a month retirement contribution made by the husband. In an amendment to the final judgment, the trial court stated, "The court reemphasizes the prior finding that the parties have historically saved for retirement and such a monthly savings for the petitioner is reasonably included in her needs." The amendment to the final judgment provided that the former wife was awarded $11,640 a month as permanent alimony. The trial court specifically found that the husband was able to pay this amount, and the husband does not assert on appeal that he cannot afford to make the monthly payments.
Appellant asserts that the trial court erred in considering the money that was contributed to the IRA during the marriage in determining the needs of the spouse because 1) the former wife will not have a career that she will be retiring from; 2) the former wife's retirement years are sufficiently protected by the alimony payments which will be made until she dies; 3) the former wife will receive a substantial investment income; and 4) the former wife is designated as the beneficiary of a substantial life insurance policy on the husband's life. In addition, appellant argues that there is no present evidentiary basis for determining the need to invest cash for future events.
Appellant's argument must fail for a number of reasons. First, while the primary criteria for determining alimony are the needs of one spouse and the ability of the other spouse to meet those needs, Huntley v. Huntley, 578 So.2d 890 (Fla. 1st DCA 1991), there is no rule that in every case, the permanent alimony award may not exceed the identified expenses of the receiving spouse. See Kelly v. Kelly, 557 So.2d 625 (Fla. 4th DCA 1990) (where parties maintained a lavish lifestyle and there was sharp disparity in earning capacity between wife and husband, it was not abuse of discretion to award permanent alimony greater than identified needs of receiving spouse). Secondly, in the case of a long-term marriage where the wife has been supportive of the husband's career, and there is no indication that the husband will have any trouble meeting his identified needs, we are unable to say that a trial court abuses its discretion in determining that the wife should continue to share in a substantial portion of the earning capacity which was achieved during the marriage. Kelly, supra. Additionally, money which is put into a retirement account is not necessarily utilized solely for retirement. Revenue which is placed into a retirement fund is also available (although early withdrawal may result in a penalty) for other expenditures, such as emergencies or a sudden loss of income. We see no reason that money put aside for a *486 couple's security cannot be considered to be part of the reasonable lifestyle of the parties in calculating alimony.[1] Finally, the money put aside for security does not constitute a prospective award of alimony based on speculative future needs. Cf. Hamilton v. Hamilton, 552 So.2d 929 (Fla. 1st DCA 1989) (automatic future increases of alimony based on speculative future raises in husband's income are not allowable). As stated in the previous paragraph, the calculation in the instant case is not based on speculative future events, but based on the past lifestyle of the parties during the marriage, which included setting aside a nest egg.
In addition, based on the assets, prospective income of the parties, and the reasonable expenses of the parties, we find no abuse of discretion in the amount of alimony awarded by the trial court.
MICKLE, J., concurs.
BENTON, J., concurring in part and dissenting in part with written opinion.
BENTON, Judge, concurring in part and dissenting in part.
This case raises the question whether, after equitably distributing the parties' assets and calculating permanent, periodic alimony based on the financial ability of the payor spouse and the needs of the payee spouse (defined in the present case to include not only food, clothing, shelter, transportation and recreation, but also freedom from gainful employment), a trial court should increase the amount of alimony by adding an investment allowance. The court today gives an affirmative answer to this question. In this one respect, I find myself unable to join the majority opinion.
In its findings order, the learned trial court catalogued the components of Mrs. Messina's needs, which Dr. Messina has now been ordered to satisfy with monthly alimony payments until his former wife's death or remarriage. The court found:
The Petitioner/Wife's analysis of Eleven Thousand Dollars ($11,000.00) exclusive of taxes [monthly], is closer to reality. The Court notes that an expense of One Thousand Forty Dollars ($1,040.00) [monthly, after taxes] for retirement is included.... Historically, the parties have invested monies for future income.
The trial court later declined to eliminate or reduce the investment allowance, saying: "The Court reemphasizes the prior finding that the parties have historically saved for retirement and such a monthly savings for Petitioner is reasonably included in her needs." (The trial court must, of course, have been contemplating Dr. Messina's retirement, not Mrs. Messina's.)
Mrs. Messina has never contended that the marital assets were distributed inequitably. She received halfincluding assets designed to yield future income, such as an individual retirement account ($140,388), an annuity ($156,870.02), and a million dollar insurance policy on Dr. Messina's life with a cash surrender value of $108,500. Her contention is that because she and her husband had invested part of his income during the marriage, she is entitled to receive money as part of her permanent, periodic alimony with which to continue to make investments for herself, now that the marriage is dissolved. Under her view, the more that was invested historically, the more she is entitled to invest in the future. There is a reason the majority is unable to cite any precedent for such an award.
Although the explicit basis for this part of the alimony award is to assure adequate future income for Mrs. Messina, the majority opinion disavows this rationale, acknowledging the well-settled rule that "trial courts may not consider future or anticipated events in setting current alimony and child support amounts due to the lack of an evidentiary basis or the uncertainty surrounding such future events." Nelson v. Nelson, 651 So.2d 1252, 1254 (Fla. 1st DCA 1995). Accord Shiveley v. Shiveley, 635 So.2d 1021 (Fla. 1st DCA 1994); Edwards v. Sanders, 622 So.2d 587 (Fla. 1st DCA 1993); Hamilton v. Hamilton, 552 So.2d 929 (Fla. 1st DCA 1989); Kernan v. Kernan, 495 So.2d 275 (Fla. 5th DCA 1986); Shapiro v. Shapiro, 452 So.2d 81 *487 (Fla. 1st DCA 1984); Wing v. Wing, 429 So.2d 782 (Fla. 3rd DCA 1983); Garrison v. Garrison, 380 So.2d 473 (Fla. 4th DCA 1980); Bailey v. Bailey, 300 So.2d 294 (Fla. 4th DCA 1974); Traylor v. Traylor, 214 So.2d 15 (Fla. 1st DCA 1968). Under the cases, retirement is just the sort of future contingency trial courts are enjoined not to anticipate in permanent, periodic alimony awards. Echols v. Elswick, 638 So.2d 581, 582 (Fla. 1st DCA 1994); Shiveley; Davidson v. Davidson, 410 So.2d 943, 944 (Fla. 4th DCA), review denied, 421 So.2d 67 (Fla.1982).
The majority opinion makes a telling point in stating: "Additionally, money which is put into a retirement account is not necessarily utilized solely for retirement." Mrs. Messina is under no obligation to put part of her alimony in a retirement account to begin with. Over and above her current needs, money her former husband is required to pay her is at her disposal for whatever purpose strikes her fancy. The extra money he has to pay does not assure that she will have additional income when he retires or that she will create an emergency fund or that her genuine future needs will in any way be better met. By requiring Dr. Messina to transfer capital for investment as part of permanent, periodic alimony payments, the trial court may be subjecting him to liability for Mrs. Messina's future needs twice.
NOTES
[1] We recognize that in most dissolution cases, there will be insufficient revenue to take care of the every-day expenses of both parties. While nest eggs or saving may be part of the lifestyle of the parties established during the marriage, in calculating the amount of alimony which is awarded, the court must first be assured that the reasonable expenses of both parties are met.