750 So.2d 42 (1999)
Larry W. MALLARD, Appellant,
v.
Charlene G. MALLARD, Appellee.
No. 98-02709.
District Court of Appeal of Florida, Second District.
July 2, 1999.
Opinion Denying Rehearing and Granting Certification September 22, 1999.
Stephen H. Grimes, Steve L. Brannock, Robert Shapiro, and J. Fraser Himes of Holland & Knight, LLP, Tampa, for Appellant.
Raymond A. Alley, Jr., Tampa, for Appellee.
*43 CASANUEVA, Judge.
Larry W. Mallard appeals from that portion of the final judgment of dissolution of marriage that awarded his former wife, Charlene G. Mallard, "savings alimony." We affirm the award and hold (1) that Florida law does not recognize a species of alimony entitled "savings alimony" and (2) that a trial court, in determining an amount of permanent alimony, may properly consider a "savings component" if the evidence shows it to be a relevant economic factor pursuant to subsection 61.08(2), Florida Statutes (1995).[1]
The parties were married on August 15, 1971, shortly after Mrs. Mallard graduated from college. She supported the family by working as a teacher while Mr. Mallard completed his college education. Following his graduation, Mr. Mallard began his career in the banking industry. His first position required the parties to relocate, the first of seven occurring during the marriage. Each relocation served to advance Mr. Mallard's professional career.
The parties had agreed to work toward advancement of Mr. Mallard's career while Mrs. Mallard would work primarily as homemaker and mother. Prior to the birth of their children, Mrs. Mallard worked full time as a teacher; after the children were born, she worked part-time and adjusted her work schedule to coincide with the children's school hours.
By any economic measure the parties' career decisions resulted in financial advancement. In 1997 Mr. Mallard's salary exceeded $428,750 annually, excluding bonuses, options, and investments. The parties' income stream did not flow out to an expenditure tributary; rather, it pooled into a reservoir of assets because of lifestyle decisions they made. Rather than spending money on extravagances that others in their income bracket might have enjoyed, Mr. and Mrs. Mallard were consciously frugal. They purchased used cars, not new ones. Mrs. Mallard did the house and yard work rather than hire help. When dining out, they drank water so as to avoid the cost of other beverages. Likewise, they eschewed expensive vacations, jewelry, and clothing. However, there were two large recurring expenditures upon which they agreed. They paid a tithe to their church approximating $40,000 per year, and, to implement their desire to save, the parties met or exceeded a savings rate of 25% of their income. By the time the petition for dissolution was filed, they had amassed assets in excess of $3 million with few liabilities.
Most issues between the parties were resolved by stipulation prior to a final hearing. The financial settlement included an equitable distribution that resulted in an identical net worth for each of the parties. Mrs. Mallard's equitable distribution of the marital assets included the marital home, over $300,000 in securities, and more than $270,000 in retirement accounts; Mr. Mallard received comparable assets.
The Mallards were unable to stipulate to the alimony amount, and it was tried to the court. To crystallize the issue, the parties presented evidence in two categories: Mrs. Mallard's recurring monthly expenditures and an amount categorized at trial as "savings alimony." Mr. Mallard stipulated that he was able to pay the amounts ultimately awarded as alimony. The dispute was whether it was legally appropriate to award Mrs. Mallard an amount based on the savings history of the parties during their marriage. Ultimately, the trial court awarded her alimony of $7,375 per month. Of that amount, the trial court denominated $3,125 as "savings alimony." The trial court determined this amount by calculating Mr. Mallard's available income subject to being saved, applying the 25% savings factor established during the marital *44 term, and dividing that amount by 2. Mr. Mallard does not contest the trial court's calculation method, only the decision to award what the trial court called "savings alimony" at all.
We first address whether there is a species of alimony called "savings alimony." We hold there is not. Section 61.08 identifies the permissible types of alimony that a trial court in Florida may award: rehabilitative, permanent, or lump sum alimony. It does not contain a category of alimony entitled "savings alimony," and we decline to judicially create one.
The next question is whether subsection 2 of section 61.08 authorizes a trial court to award permanent alimony that includes within its computation a savings component. For the reasons set forth herein, we hold that it does.
Permanent alimony is merely post-marital support to a former spouse who cannot so provide for him- or herself post-dissolution. One of the many factors to be considered, and one of the more important ones, is the standard of living enjoyed by the parties during the course of the marriage. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994). Thus, the alimony award should permit each party to enjoy the prior lifestyle of the marriage, given the availability of financial resources, another major factor. See Laz v. Laz, 727 So.2d 966 (Fla. 2d DCA 1998). Among section 61.08(2)'s suggested relevant economic factors are the "financial resources" of the parties and "any other factor necessary to do equity and justice between the parties." By using such broad language, the legislature intended the trial court to consider the totality of the parties' economic lifestyle. How the Mallards saved as well as spent their income is clearly a "relevant economic" factor in establishing their standard of living. To direct the trial court, in determining alimony, to disregard the marital decision to save permits the payor spouse, post-dissolution, to maintain the marital lifestyle while simultaneously denying that right to the other spouse in violation of statutory principles and applicable case law, such as Laz. Conversely, factoring in this relevant economic factor of a proven savings history complies with these principles to the extent that each party will be able to approximate the prior lifestyle. Accordingly, we find that an award of alimony that includes a savings component is authorized by law.
As with any factual determination, a finding that the parties had historically saved a portion of their income must be grounded upon competent, substantial evidence. The evidence in this case more than adequately supports the trial court's finding.
Mr. Mallard offers several arguments to justify a different result. He asserts that this award constitutes an impermissible double dipping by Mrs. Mallard because she has already benefitted from the parties' savings history by sharing in the equitable distribution of assets that were accumulated as a result of their frugal habits. He also claims that such savings factor impermissibly permits Mrs. Mallard to share in her former spouse's future income based on speculative future events. Finally, he contends that the savings portion of the award must be set aside because the trial court cannot ensure that it will actually be saved. These arguments do not persuade us to reach a different result.
Mrs. Mallard was entitled by law to an equitable distribution of marital assets. She did not receive a gift of these assets that the future savings component amount doubles. Rather, she received an equal distribution of assets accumulated during the marriage by reason of jointly made economic decisions. By its nature and definition, equitable distribution looks to the past to account for assets accumulated during the marriage. Alimony, by its nature and definition, looks to the future. *45 The two awards are different species and are funded from different sources. There is no double dipping nor is there a lien on the future income of the payor spouse in any way different from any usual award of alimony. The alimony award is grounded in the history established at the time of the dissolution proceedings, not by reason of some unknown historical event. Deciding the combination of equitable distribution and alimony requires the trial court to put on the countenance of the Roman god Janus, with one face pointed in the direction of the past and the other facing the future.
Although Mr. Mallard is correct to say that the trial court can not ensure that Mrs. Mallard will actually save this portion of her alimony, it is equally correct to state that a trial court lacks authority to compel her to spend any part of her alimony income in a specific manner. Any alimony recipient has an individual personal duty to spend money wisely. No award of permanent alimony comes with court oversight of future expenditures. For example, had the evidence shown that the parties acquired a new vehicle every two years for Mrs. Mallard's use, the trial court, without question, could have considered that expense in awarding her permanent alimony. Nevertheless, in such circumstance, the trial court would not inquire whether she actually purchased a vehicle every two years. The use of the alimony is left to the recipient. The law thus acknowledges that a person's lifestyle may change following dissolution of marriage but the trial court's initial alimony award must be grounded upon the marital lifestyle of the past.
Another facet of this issue persuades us of the correctness of our disposition here. If we were to hold that an award of a savings component in alimony is improper, then the frugal spouse would not be treated equally to a spendthrift spouse. If one spouse of a divorcing couple were a spendthrift, and the payor spouse had sufficient income that allowed such a habit, the couple's spending history would be part of the marital lifestyle and factored into the alimony equation at dissolution. If a frugal spouse in similar circumstances were given that same amount of money to spend but deposited it into the bank instead, a trial court that denied that frugal spouse the same amount of alimony would be rewarding a spendthrift lifestyle at the expense of a frugal one. We decline to penalize the frugal spouse for jointly electing to save a portion of the marital income.
Affirmed.
PARKER, A.C.J., Concurs.
WHATLEY, J., Dissents with opinion.
WHATLEY, J., Dissenting.
I respectfully dissent. Alimony was appropriate in this case. The wife asserted her needs were $4,250 per month. The husband acknowledged that he had the ability to pay this amount. No additional amount of alimony should have been considered. Nevertheless, the trial court awarded the wife the $4,250 per month amount plus an additional $3,125 per month for "savings alimony," citing Messina v. Messina, 676 So.2d 483 (Fla. 1st DCA 1996), and section 61.08(1), Florida Statutes (1997). The majority recognizes the lack of authority for "savings alimony" and cites Messina only in a footnote. Whatever label is applied, permanent periodic alimony may only be awarded under the standard set forth in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980):
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
Id. at 1201. See also Hann v. Hann, 629 So.2d 918 (Fla. 2d DCA 1993).
*46 The majority contends that alimony looks to the future. I respectfully believe an appropriate computation of alimony looks to the past. "Both permanent periodic and rehabilitative alimony are intended to enable the moving spouse to maintain the lifestyle enjoyed before the dissolution." Cardillo v. Cardillo, 707 So.2d 350, 351 (Fla. 2d DCA), review denied, 725 So.2d 1107 (Fla.1998). What may occur in the future is not a criteria for an alimony award. See Olds v. Olds, 555 So.2d 883 (Fla. 2d DCA 1989). If circumstances do change in the future, either party may file a petition for modification.
Reliance on section 61.08 by the trial court was misplaced. The factors of section 61.08(2) are only considered to establish need. See Pollock v. Pollock, 722 So.2d 283 (Fla. 5th DCA 1998). Here, the wife's maximum need was $4,250 per month.
This was a long-term frugal marriage. A lavish lifestyle equates to a higher alimony award based on the needs and necessities of that lifestyle. See Webb v. Webb, 659 So.2d 336 (Fla. 1st DCA 1995). The standard of living a spouse enjoys during a marriage is the standard that alimony is designed to achieve, assuming an ability to pay. See Kirkland v. Kirkland, 568 So.2d 494 (Fla. 1st DCA 1990). The wife's benefit from the frugal lifestyle was the receipt of over $1 million in equitable distribution and departing the marriage free of debt. (Additionally, the husband agreed to pay her attorney's fees and costs.) The irony of the majority's position is that a lavish lifestyle may not have resulted in the total alimony awarded from this frugal marriage.

ON MOTIONS FOR REHEARING, CERTIFICATION, AND REHEARING EN BANC
PER CURIAM.
Upon consideration, we deny the Appellant's motions for rehearing and rehearing en banc. We grant the Appellant's motion for certification and certify the following question as one of great public importance.
WHEN THE PARTIES TO A DISSOLUTION OF MARRIAGE ACTION HAVE HISTORICALLY DEMONSTRATED THE REGULAR AND CONSISTENT PATTERN TO SAVE MONEY OVER AN EXTENDED PORTION OF THEIR LONG-TERM MARRIAGE, MAY A TRIAL COURT CONSIDER THIS FACTOR IN AWARDING PERMANENT ALIMONY THAT EXCEEDS THE RECIPIENT SPOUSE'S CURRENT NEEDS AND NECESSITIES?
PARKER, A.C.J., and WHATLEY and CASANUEVA, JJ., Concur.
NOTES
[1] See Messina v. Messina, 676 So.2d 483 (Fla. 1st DCA 1996), where the First District held it was not an abuse of discretion to consider the amount of money saved by the parties for retirement when calculating the reasonable amount necessary for the former wife to maintain herself in the lifestyle established during the marriage.