771 So.2d 1138 (2000)
Larry W. MALLARD, Petitioner,
v.
Charlene G. MALLARD, Respondent.
No. SC96854.
Supreme Court of Florida.
November 16, 2000.
Stephen H. Grimes of Holland & Knight LLP, Tallahassee, Florida; and Steven L. Brannock, Robert J. Shapiro and J. Fraser Himes of Holland & Knight LLP, Tampa, Florida, for Petitioner.
Raymond A. Alley, Jr. and Joy Ann Demas of Raymond A. Alley, Jr., P.A., Tampa, Florida, for Respondent.
PER CURIAM.
We have for review a decision on the following question certified to be of great public importance:

WHEN THE PARTIES TO A DISSOLUTION OF MARRIAGE ACTION *1139 HAVE HISTORICALLY DEMONSTRATED THE REGULAR AND CONSISTENT PATTERN TO SAVE MONEY OVER AN EXTENDED PORTION OF THEIR LONG-TERM MARRIAGE, MAY A TRIAL COURT CONSIDER THIS FACTOR IN AWARDING PERMANENT ALIMONY THAT EXCEEDS THE RECIPIENT SPOUSE'S CURRENT NEEDS AND NECESSITIES?
Mallard v. Mallard, 750 So.2d 42 (Fla. 2d DCA 1999) (on rehearing). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
The undisputed facts as established by the district court are as follows:
By any economic measure the parties' career decisions resulted in financial advancement. In 1997 Mr. Mallard's salary exceeded $428,750 annually, excluding bonuses, options, and investments. The parties' income stream did not flow out to an expenditure tributary; rather, it pooled into a reservoir of assets because of lifestyle decisions they made. Rather than spending money on extravagances that others in their income bracket might have enjoyed, Mr. and Mrs. Mallard were consciously frugal. They purchased used cars, not new ones. Mrs. Mallard did the house and yard work rather than hire help. When dining out, they drank water so as to avoid the cost of other beverages. Likewise, they eschewed expensive vacations, jewelry, and clothing. However, there were two large recurring expenditures upon which they agreed. They paid a tithe to their church approximating $40,000 per year, and, to implement their desire to save, the parties met or exceeded a savings rate of 25% of their income. By the time the petition for dissolution was filed, they had amassed assets in excess of $3 million with few liabilities.
Most issues between the parties were resolved by stipulation prior to a final hearing. The financial settlement included an equitable distribution that resulted in an identical net worth for each of the parties. Mrs. Mallard's equitable distribution of the marital assets included the marital home, over $300,000 in securities, and more than $270,000 in retirement accounts; Mr. Mallard received comparable assets.
The Mallards were unable to stipulate to the alimony amount, and it was tried to the court. To crystallize the issue, the parties presented evidence in two categories: Mrs. Mallard's recurring monthly expenditures and an amount categorized at trial as "savings alimony." Mr. Mallard stipulated that he was able to pay the amounts ultimately awarded as alimony. The dispute was whether it was legally appropriate to award Mrs. Mallard an amount based on the savings history of the parties during their marriage.
Mallard, 750 So.2d at 43. The trial court awarded respondent $7375 per month in alimony, of which $3125 was denominated as "savings alimony." The trial court determined the savings alimony by taking petitioner's income, multiplying that amount by 0.25 based on the parties' 25% savings rate established during the marriage, and dividing the resulting amount in half.
On appeal, the petitioner contested the trial court's decision to award "savings alimony," but did not contest the court's method of calculating the allocation-assuming Florida law supports such an award. The district court affirmed the award and held that "Florida law does not recognize a species of alimony entitled `savings alimony,'" but that in determining the amount of permanent alimony, trial courts "may properly consider a `savings component' if the evidence shows it to be a relevant economic factor pursuant to subsection 61.08(2), Florida Statutes (1995)." Mallard, 750 So.2d at 43. The court explained that factoring in the parties' well-established savings pattern was supported by the broad language used by the Legislature, which evidences the intention that trial courts consider the totality of the *1140 parties' economic lifestyle. See id. We disagree.
The purpose of permanent periodic alimony is to provide for the needs and necessities of life for a former spouse as they were established during the marriage of the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980). "The criteria to be used in establishing this need include the parties' earning ability, age, health, education, the duration of the marriage, the standard of living enjoyed during its course, and the value of the parties' estates." Id. at 1201-02. For example, in Firestone v. Firestone, 263 So.2d 223 (Fla.1972), the marital lifestyle was described:
[D]uring the marriage of these parties, and prior to their separation, the wife was afforded numerous privileges, such as: a $3,000.00 per month allowance to spend as she desired; clothing allowances of approximately $5,000.00 per month; the use of various automobiles, as well as the use of an airplane and helicopter at any time. To say the least the luxuries shared by these parties during cohabitation would equal the splendor of many of the sultans out of "Arabian Nights."
Id. at 226. More ordinary lifestyle needs may include the mortgage and maintenance costs on a townhouse in which an ex-spouse resides, having a reliable automobile, being able to have broken kitchen appliances fixed, or to be able to afford food, clothing, and air conditioning. See Bedell v. Bedell, 583 So.2d 1005, 1008 (Fla. 1991). A common denominator in these different lifestyles or needs is that the amount of money spent or the comforts enjoyed do not include funds allocated towards the stated purpose of saving or investing. Items customarily considered as marital assets for the purpose of determining permanent alimony reflect the parties' history of consumption-whether on luxuries or on the literal necessities of life. Current necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony. See Rosen v. Rosen, 696 So.2d 697, 703 (Fla.1997).
This Court's decision in Boyett v. Boyett, 703 So.2d 451 (Fla.1997), supports our result in the instant case. In Boyett, the Court was called upon to value a retirement plan for distribution purposes and held, pursuant to the definition of marital assets, that the valuation of the plan should not include contributions made after the original judgment of dissolution.[1]See id. at 452. We find Boyett instructive in the instant case where the parties' frugality during the marriage resulted in their being able to save not less than twenty-five percent of their income-the savings being similar to the contributions to the Boyett pension plan. For the purpose of determining marital assets, the receiving spouse is limited to assets accumulated during the marriage. See id. This holding correlates to denying the recipient spouse permanent alimony based upon the parties' marital savings pattern.
In awarding alimony, the court may not factor in speculative post-dissolution savings based upon a marital history of frugality. Any accumulation of marital assets occasioned by the frugality of the parties during the marriage is taken into consideration by equitable distribution. The petitioner in this case benefitted from the frugality of the parties' marital lifestyle by receiving over one million dollars *1141 in equitable distribution and departing the marriage free of debt.
We disapprove of the holding in Messina v. Messina, 676 So.2d 483 (Fla. 1st DCA 1996), which is the first Florida case to recognize a savings element in an alimony award. We agree with the dissent in Messina that:
Although the explicit basis for this part of the alimony award is to assure adequate future income for Mrs. Messina, the majority opinion disavows this rationale, acknowledging the well-settled rule that "trial courts may not consider future or anticipated events in setting current alimony and child support amounts due to the lack of an evidentiary basis or the uncertainty surrounding such future events." Nelson v. Nelson, 651 So.2d 1252, 1254 (Fla. 1st DCA 1995). Under the cases, retirement is just the sort of future contingency trial courts are enjoined not to anticipate in permanent, periodic alimony awards. Echols v. Elswick, 638 So.2d 581, 582 (Fla. 1st DCA 1994).
Id. at 486-87 (Benton, J., concurring in part and dissenting in part) (citations omitted).
Based on the foregoing, we hold that alimony may not include a savings component, we answer the certified question in the negative, and quash the decision below.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD and LEWIS, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.
PARIENTE, J. dissenting.
I dissent because the majority's holding creates an inflexible rule that is incompatible with the principles of alimony. Indeed, the rule established by the majority opinion penalizes the frugal spouse, who at his or her mate's request, has accepted a lifestyle based on security rather than profligate spending. I would thus approve the reasoning of the Second District majority in Mallard v. Mallard, 750 So.2d 42 (Fla. 2d DCA 1999), as explained by Judge Casanueva:
Permanent alimony is merely post-marital support to a former spouse who cannot so provide for him- or herself post-dissolution. One of the many factors to be considered, and one of the more important ones, is the standard of living enjoyed by the parties during the course of the marriage. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994). Thus, the alimony award should permit each party to enjoy the prior lifestyle of the marriage, given the availability of financial resources, another major factor. See Laz v. Laz, 727 So.2d 966 (Fla. 2d DCA 1998). Among section 61.08(2)'s suggested relevant economic factors are the "financial resources" of the parties and "any other factor necessary to do equity and justice between the parties." By using such broad language, the legislature intended the trial court to consider the totality of the parties' economic lifestyle. How the Mallards saved as well as spent their income is clearly a "relevant economic" factor in establishing their standard of living. To direct the trial court, in determining alimony, to disregard the marital decision to save permits the payor spouse, post-dissolution, to maintain the marital lifestyle while simultaneously denying that right to the other spouse in violation of statutory principles and applicable case law, such as Laz. Conversely, factoring in this relevant economic factor of a proven savings history complies with these principles to the extent that each party will be able to approximate the prior lifestyle. Accordingly, we find that an award of alimony that includes a savings component is authorized by law.
750 So.2d at 44 (emphasis supplied). In my opinion this reasoning, as well as that of the First District in Messina v. Messina, *1142 676 So.2d 483 (Fla. 1st DCA 1996), is more consistent with the flexible nature of alimony awards authorized by our Legislature.[2] As Judge Wolf observed:
We see no reason that money put aside for a couple's security cannot be considered to be part of the reasonable lifestyle of the parties in calculating alimony. Finally, the money put aside for security does not constitute a prospective award of alimony based on speculative future needs. Cf. Hamilton v. Hamilton, 552 So.2d 929 (Fla. 1st DCA 1989) (automatic future increases of alimony based on speculative future raises in husband's income are not allowable). As stated in the previous paragraph, the calculation in the instant case is not based on speculative future events, but based on the past lifestyle of the parties during the marriage, which included setting aside a nest egg.
Messina, 676 So.2d at 485-86 (footnote omitted).
I would align our State with the more enlightened view supported by a majority of the jurisdictions that have considered this issue and that have failed to see why a spouse should be deprived of the lifestyle to which he or she has become accustomed just because that lifestyle "involved the purchase of stocks and bonds rather than fur coats." Winter v. Winter, 7 Cal. App.4th 1926, 10 Cal.Rptr.2d 225, 228 (1992).[3]
The alimony award fashioned by the trial judge in this case recognized the totality of the parties' lifestyles and, as required by statute, "any other factor necessary to do equity and justice between the parties." § 61.08(2), Fla. Stat. (1995). Moreover, the husband benefitted from the frugal lifestyle the parties enjoyed during the marriage by amassing assets just as the wife did. Under the majority's opinion however, the husband, who has a substantial earnings history, will be able to continue his pattern of savings and the security attendant thereto, while the wife, based on the majority's holding, will have no comparable opportunity to continue in accordance with the parties' previous lifestyle.
QUINCE, J., concurs.
NOTES
[1] Section 61.075, Florida Statutes (1993), provides in part:

(5) As used in this section:
(a) "Marital assets and liabilities" include:
1. Assets acquired and liabilities incurred during the marriage, individually by either spouse or jointly by them; [and]
. . . .
4. All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs....
Id., § 61.075(5)(a).
[2] I also do not find Boyett v. Boyett, 703 So.2d 451 (Fla.1997), to be dispositive because Boyett implicated both a different statute and different policy considerations. In Boyett, this Court interpreted the equitable distribution statute and, in particular, the statutory definition of marital assets pursuant to section 61.075(5)(a), Florida Statutes (1993). In this case, we are considering the separate question of the interpretation of the alimony statute, specifically section 61.08(2), Florida Statutes (1995), and the policy implications of allowing the couple's savings pattern to be considered as part of the parties' lifestyle in calculating alimony.
[3] See, e.g., Rainwater v. Rainwater, 177 Ariz. 500, 869 P.2d 176, 181 (1993) ("[H]usband objects that wife's expenses were overstated by the amount of $337.60 for monthly savings and retirement contributions. Husband, however, has cited no authority for the proposition that this is an illegitimate expense item."); In re Marriage of Weibel, 965 P.2d 126, 129-30 (Colo.Ct.App.1998) ("[A] former spouse receiving maintenance, not the obligor, should be permitted to benefit from his or her frugality and should not be penalized for choosing a more austere life style."); In re Marriage of Kusper, 195 Ill.App.3d 494, 142 Ill.Dec. 282, 552 N.E.2d 1023, 1026 (1990); Rodeghier v. Rodeghier, No. C3-98-481, 1998 WL 727751, at *2 (Minn.Ct.App. Oct.20, 1998); Rhew v. Rhew, 531 S.E.2d 471 (N.C.Ct.App.2000); Glass v. Glass, 131 N.C.App. 784, 509 S.E.2d 236, 239 (1998); Kane v. Kane, No. 1-87-7, 1988 WL 46187, at *5 (Ohio Ct.App. May 6, 1988); LaVoi v. LaVoi, 505 N.W.2d 384, 387 (N.D.1993); Hubert v. Hubert, 159 Wis.2d 803, 465 N.W.2d 252, 258-59 (1990).