691 So.2d 1091 (1997)
Craig DONOFF, Appellant/Cross-Appellee,
v.
Mitzi Robin DONOFF, Appellee/Cross-Appellant.
Nos. 95-2922, 95-3411 and 96-0963.
District Court of Appeal of Florida, Fourth District.
February 26, 1997.
Rehearing and Clarification Denied May 5, 1997.
Stephen Rakusin of Stephen Rakusin, P.A., Fort Lauderdale, for appellant/cross-appellee.
Melinda Penney Gamot of Melinda Penney Gamot, P.A., and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellee/cross-appellant.
POLEN, Judge.
Craig Donoff appeals from a final judgment of dissolution of marriage, raising nine separate points on appeal. Mitzi Donoff raises three points by way of cross-appeal. We reverse based on a consideration of two points on appeal and one point on cross-appeal.
The trial court awarded $6,500 per month in permanent periodic alimony to the former wife. We reverse, because the following statement made by the court at the hearing on the parties' motion for rehearing indicates *1092 that it might not have realized that it had the option of awarding to the former wife lump sum alimony payable in monthly installments:
You're right the age was a problem, and I gave this a lot of thought, Florida law does not allow alimony for a fixed number of years. Not allowed. There's no sort of hybrid alimony. It's either lump sum, periodic or rehab. I didn't really find the greater weight of the evidence favored rehab. If the law allowed it I would have picked the kind that Florida doesn't allow. But if it's not allowed in Florida, I can't do it. So my choices were lump sum, that I didn't want to do either. I would think that would be worse for your side. Or periodic. So, you know, the only other thing is zero alimony or rehabilitative alimony.
So given my three choices, what I saw as three, which is noneI didn't really think lump sum was a good choice, None, rehabilitative or permanent. That's the way I looked at it.
In Canakaris v. Canakaris, 382 So.2d 1197, 1201 (Fla.1980), it was pointed out that a trial court may award lump sum alimony (in addition to, or as an alternative to rehabilitative or permanent period alimony), so long as there existed (1) a justification for such alimony supported by evidence, and (2) financial ability of the other spouse to make such payment without endangering his or her own economic status. This would apply as well to the alternative of lump sum alimony payable in installments.
Accordingly, we remand for the trial court to consider the option of lump sum alimony payable in installments, and to determine whether such a change if made will have an effect on any other aspects of the financial award. We do emphasize however, that by remanding we do not mean to suggest that permanent periodic alimony is inappropriate in this fourteen year marriage where the wife has had minimal education and a limited employment background. Rather, we think the trial court should have the opportunity to consider all available options, including lump sum alimony payable in installments, before making this decision.
We also reverse the portion of the final judgment requiring the former husband to pay to the former wife the guideline child support for both minor children, rather than the guideline support for the one minor child that resides at home. The former husband is already paying $85,000 per year to maintain the minor son, who is autistic, in a fulltime residential facility. This amount covers the minor son's residential needs for ten months of the year. When he is at home for holidays and during the summer, he is with the former husband part of the time. It is highly unlikely that the son's expenses during the time he resides with the former wife, including clothes she buys for him or gifts she sends him, would be the equivalent of the support required to maintain a child on a full-time basis. See Griffin v. Griffin, 510 So.2d 360 (Fla. 2d DCA 1987) (award of $200 per week to wife as child support for minor child with Down syndrome was erroneous where husband was required to pay all school, educational, and training expenses of the child, and the child only visited her mother twice a year in her home). The trial court will need to reconsider other financial aspects of the final judgment to ensure that the needs of the former wife and the minor daughter are still being met in light of this reduction in child support.
Finally, on the cross-appeal, we feel obliged to reverse the portion of the judgment requiring the former wife to pay her own attorney's fees and costs. The issue of attorney's fees will have to be looked at anew in light of our reversal of the two financial aspects of the final judgment as set forth above. We point out, however, that had we not already been reversing at bar, we would have affirmed the denial of fees in light of the substantial alimony awarded and equitable distribution made to the former wife, as well as the equivalent income of the parties when all aspects of the final judgment are considered. We also quote the following portion of the trial court's order denying the former wife's motion for attorney's fees but awarding costs, in hopes that the parties heed some of the wisdom imparted to them by the trial court:

*1093 These are all matters of serious financial concern but just as stated in the Final Judgment the Court feels that the litigation in these matters has been excessive. Both parties seem to irritate each other to the point where both parties take extreme positions. This has resulted in ridiculously large litigation costs over the course of this divorce which are getting to the point of endangering the financial security of the children in an otherwise affluent family. The court has previously ruled that the parties have equivalent abilities to pay their legal costs and the Court has not found that one side should bear the other side's legal costs due to a higher proportion of excessive litigation. Both sides are litigating themselves into a much lower standard of living. Continual litigation is going to result in complaints by both sides that the Final Judgment of the Court did not award them sufficient money because they have spent so much money litigating. It will result in petitions to modify the Final Judgment, further emergency hearings because of the inability to pay the Higashi School and so on. It would be a tragedy if the children suffered because the parties cannot stop litigating.
We agree with the trial court that the instant case has been over litigated to the point of absurdity. The mere fact that the former wife alone has incurred over $300,000 in fees demonstrates the ridiculous amount of litigation the parties have engaged in. Accordingly, we feel compelled to emphasize once again our disdain for excessive fees in dissolution of marriage actions. See Katz v. Katz, 505 So.2d 25 (Fla. 4th DCA 1987) (recognizing the responsibility of the parties, the marital bar and the bench at the trial and appellate level to be mindful of unnecessary expense in the litigation of dissolution matters so as not to dissipate assets of innocent unrepresented children); Tomaino v. Tomaino, 629 So.2d 874 (Fla. 4th DCA 1993), and Kass v. Kass, 560 So.2d 293 (Fla. 4th DCA 1990) (also recognizing that the problem of escalating fees in dissolution of marriage actions needs to be solved).
Accordingly, we reverse the various financial aspects of the final judgment and remand for further proceedings consistent with this opinion.
PARIENTE and GROSS, JJ., concur.