POLEN, C.J.
Former Husband, George Martire, timely appeals from a final judgment of dissolution of marriage. The limited record shows that the parties, who met over the internet, were married for less than one year before Former Husband sought a dissolution of marriage. Their marriage *632 produced no minor children.[1] Former Wife came to the United States from Russia with her then nine-year-old son and spoke little English. She had no family here other than her son, and her entire support system was in Russia. Accepting her plan for rehabilitative alimony, the court found she was in need of rehabilitative alimony in the amount of $500 per month, and ordered that it continue until modified by court order, the death of either party or until March 25, 2003, whichever occurred first. On appeal, Former Husband takes issue, generally, with this award.
Courts award rehabilitative alimony to provide an opportunity for the former spouse to “establish the capacity for self-support” commensurate with the standard of living established during the course of the marriage, “either through redevelopment of previous skills or provision of the training necessary to develop potential supportive skills.” Blase v. Blase, 704 So.2d 741, 742 (Fla. 4th DCA 1998) (citations omitted). In addition, some courts have allowed rehabilitative alimony awards to serve as a “bridge-the-gap” measure to help the recipient spouse make the transition from a married to a single state. Corchado v. Corchado, 648 So.2d 1261, 1261 (Fla. 4th DCA 1995).
We hold the court’s findings were sufficient to comply with the factors in section 61.08(2), Florida Statutes (1999), so as to support the award. As the court suggested, a sufficient basis for the award was to help Former Wife transition herself into single life in America. See Williamson v. Williamson, 367 So.2d 1016, 1019 (Fla.1979)(holding that, in awarding alimony, a court may consider “any conduct of either party which may have caused the difficult economic situation in which they stand before the court”). In any event, absent a transcript to refute the findings of the court, we must presume they are correct. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).
Former Husband also argues he was denied due process because he never received notice that trial would be held on March 1, 2000. Without a trial transcript or some other stipulation by the parties, this court must presume that the court’s contrary findings are correct. Despite this court’s order for him to do so, Former Husband failed to provide this court with a copy of the notice of trial or transcript of the final hearing. See id.; Bimonte v. Martin-Bimonte, 679 So.2d 18, 19-20 (Fla. 4th DCA 1996)(holding trial court’s findings of fact come to this court clothed with the presumption of correctness and shall not be disturbed unless there was no competent evidence to sustain them). We, therefore, affirm.
AFFIRMED.
WARNER and GROSS, JJ., concur.

. Both parties have children from previous relationships.