845 So.2d 927 (2003)
Lauren Richard ROSECAN, Appellant,
v.
Carol Ann SPRINGER, Appellee.
Nos. 4D01-2930, 4D01-4478.
District Court of Appeal of Florida, Fourth District.
April 16, 2003.
Rehearing Denied June 2, 2003.
*928 Cynthia Greene of Cynthia Greene & Associates, P.A., Miami and Paula Revene of Paula Revene, P.A., Fort Lauderdale, for appellant.
Neil B. Jagolinzer of Christiansen & Jacknin, West Palm Beach, for appellee.
MAY, J.
The former husband appeals a final dissolution order and raises two issues. We find the award of permanent periodic alimony in need of reversal and affirm the order in all other respects.
Before we begin our analysis, we pause to acknowledge the work of the trial judge in this case. This judge worked diligently, capturing all relevant facts, and dissected this complicated dissolution with the skill of a surgeon. It is obvious to us that great thought was given to the court's decision. The trial judge dedicated long hours to articulating its ruling. We also acknowledge counsel for restricting their arguments on appeal to essential points and for arguing their respective positions in a clear and professional manner.
With that said, we are compelled to reverse the award of permanent periodic alimony to the former wife.
Permanent periodic alimony is used to provide the needs and the necessities of life to a former spouse as they have been established during the marriage of the parties. In determining whether to award permanent periodic alimony, the court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to make alimony payments.
Zeigler v. Zeigler, 635 So.2d 50, 53 (Fla. 1st DCA 1994) (citations omitted). The Florida Legislature has identified the criteria to use in making this determination: the standard of living established during the marriage, duration of the marriage, age and physical and emotional condition of the parties, financial resources of each party, time necessary to acquire sufficient education or training, contribution to the marriage, and all sources of income available to either party. § 61.08(2)(a)-(g), Fla. Stat. (2001).
It is not within our purview to reweigh the facts. This trial court did an excellent job at that. Nevertheless, it is the trial court's specific findings of fact that drew our attention to the error in its conclusion.
The trial court specifically found the following:
1) The marital estate is worth several millions of dollars.
2) The parties have had plentiful domestic and childcare assistance for the bulk of the marriage.
3) Even though the wife claims to have worked only 15 hours per week, the home and child care providers remained on staff for the great part of the week.
4) A review of the exhibits generated by both accountants causes the court to conclude that the figures of ... the husband's accountant, are more in line with credible and non-recurring expenses.
5) Husband's accountant suggests the Wife's monthly personal expenses are $18,289.00....
6) The length of this marriage is in the "grey area" for purposes of considering permanent periodic alimony.
7) The wife is forty nine.
8) An objective evaluation of the credible evidence suggests a desire on the part of the wife for a voluntary lifestyle change.
9) The wife has income potential from her rental property which the evidence establishes is clearly rented below capacity. Her equitable distribution will yield her substantial passive *929 income, the amounts of which are dependant on the use of the liquid assets and whether she converts certain property to cash.
10) [T] he troubling part of this alimony issue is that there are grains of truth to the husband's contention that the wife has exaggerated her needs, that she minimized her capacity to work given the fact that she really is not a true stay-at-home-mom and given the testimony of the sale of her practice, that she minimized her earning capacity given the income reported to the IRS for only 15 hours of work a week, and that she minimized her potential for income from rental property that she collects no rent in one instance and the amount of rent she has chosen to charge in others.
11) The assets and resources of the parties are commensurate with one another based upon equitable distribution [$6,750, 947.50] per spouse.
12) The evidence presented is not overwhelming to suggest that the wife made personal sacrifices in her career to promote or benefit the husband's career.
13) Working full time as a non-surgical ophthalmologist, her wages in the short run would not likely exceed $130,000.00. Her annual wages in the long run of $200,000.00 to $300,000.00 (three to five years) will still never approach that of her husband. However, her ability to reach that level of earnings do not require her to re-train for surgical skills.
14) The primary factor weighing in favor of permanent periodic alimony is the income disparity.
With all of these findings, the court awarded a permanent periodic alimony of $20,000.00 a month, taxable to the wife. We cannot reconcile this conclusion with the court's finding of the wife's need being $18,289.00. This is especially true in light of the passive income to be generated from the equitable distribution to the wife and the wife's earning capacity now and in the future. The figures simply do not compute.
We are mindful of the narrow scope of our reviewabuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). Nevertheless, the numbers and the findings do not add up to $20,000.00 a month in permanent periodic alimony.
Absent special circumstances which do not appear in the judgment, an alimony award should not exceed a spouse's need. See McCray v. McCray, 493 So.2d 1117 (Fla. 1st DCA 1986). One spouse's need is a crucial component in the alimony equation.
Disparity in income alone does not justify an award of permanent periodic alimony. See Segall v. Segall, 708 So.2d 983 (Fla. 4th DCA 1998); Langevin v. Langevin, 698 So.2d 601 (Fla. 4th DCA 1997); Wright v. Wright, 613 So.2d 1330 (Fla. 4th DCA 1993). Yet, this seems to have been the court's primary reason for its award.
Reading the trial court's order, one is led to expect a conclusion that there will be no award of permanent periodic alimony. Then, near the end of the discussion of alimony, the trial court wrote: "The primary factor weighing in favor of permanent periodic alimony is the income disparity." The court then concludes that permanent periodic alimony, in an amount unsupported by the record, is appropriate. It is in this conclusion that we find error.
The purpose of permanent periodic alimony is not to divide future income to establish financial equality. It "is to provide for the needs and necessities of life for a former spouse as they were established *930 during the marriage of the parties." Mallard v. Mallard, 771 So.2d 1138, 1140 (Fla.2000). In Mallard, the supreme court rejected the idea that, by including a savings component, an alimony award could exceed the recipient spouses's current needs and necessities, where the couple routinely saved 25% of their income during the marriage. Id. at 1140-41. We read Mallard as forbidding a court from using alimony as a tool to forge economic equality, without regard to the needs of the recipient spouse.
We remand to the trial court for reconsideration of the award of alimony, while removing income disparity from the equation. The husband's income is relevant, since it establishes his ability to pay any award up to the dollar amount of the wife's need as determined in the trial court's order. This remand is not an invitation for these litigious parties to relitigate the issue of alimony. We contemplate that the trial judge will be able to use the extensive findings in its original order to come to a decision.
We note that "[a]n award of permanent alimony is improper where the evidence does not reflect permanent inability on the part of the wife to become self-sustaining." Aresty v. Weinstein, 667 So.2d 846, 847 (Fla. 3d DCA 1996) (quoting Wismar v. Wismar, 522 So.2d 552, 553 (Fla. 5th DCA 1988)).
Rehabilitative alimony may also be an option. As this court has recognized, "[c]ourts award rehabilitative alimony to provide an opportunity for the former spouse to establish the capacity for self-support commensurate with the standard of living established during the course of the marriage...." Martire v. Martire, 792 So.2d 631, 632 (Fla. 4th DCA 2001).
Upon remand, the trial court should consider its existing findings concerning the wife's current and future earning capacity and passive income in relation to the court's finding of her need. The court may then fashion alimony (rehabilitative or permanent periodic) to bridge the gap between her current and future earning capacity (including passive income) and the standard of living established during the course of the marriage to insure that her needs are met.
We reverse and remand the award of permanent periodic alimony and affirm the judgment in all other respects.
GROSS, J., and DAMOORGIAN, DORIAN, Associate Judge, concur.