940 So.2d 1221 (2006)
Craig DONOFF, Appellant,
v.
Mitzi Robin DONOFF, Appellee.
No. 4D05-3918.
District Court of Appeal of Florida, Fourth District.
November 1, 2006.
*1222 Stephen Rakusin of the Rakusin Law Firm, Fort Lauderdale, for appellant.
Steven M. Katzman and Alexandra Sierra-De Varona of Katzman, Wasserman & Bennardini, P.A., Boca Raton, for appellee.
FARMER, J.
In this latest entry in the unfinished history of the Donoff divorce,[1] Craig appeals a final order granting his request to modify alimony. Of course he does not quarrel with the trial judge's finding that he successfully proved a substantial enough change in the circumstances of Mitzi to warrant a modification. He does argue, however, that in determining the *1223 amount by which alimony should be modified the trial judge made prejudicial errors. We agree and affirm the trial judge's finding that modification is warranted, but reverse the modified alimony and remand for a determination as to a new amount, if any at all.
As grounds for modification, Craig alleged that Mitzi had entered into a permanent arrangement of cohabiting with another man who provides her with economic support. The trial court found that she has in fact entered into such a supportive relationship for the past 10 years and that it is "equivalent to a marriage." That finding is the basis for the court's determination that modification of alimony was warranted. We hold that the evidence supports the trial court's determination in this regard and leave it undisturbed.
Turning, therefore, to the question of any amount that might be newly fixed, the trial judge held that he was not required to apply the criteria of section 61.08(2) to determine a modified amount of alimony.[2] In holding these criteria inapplicable, the trial judge said he thought it "inexplicable why, in a post-judgment modification proceeding, the court should once again consider many of the factors under section 61.08(2)."
In Mirsky v. Mirsky, 474 So.2d 9, 9 (Fla. 5th DCA 1985), the Fifth District held that it was an abuse of discretion not to consider the section 61.08(2) criteria in determining the amount by which permanent alimony should be modified. We do not think this requirement incomprehensible. For one thing, it is apparent that the legislature has used specified "factors" or "circumstances" in chapter 61 to create standards governing the exercise of trial court discretion. These section 61.08(2) factors operate to direct and circumscribe all awards of alimony, thereby making outcomes more predictable. Nothing in any statute purports to eliminate these "relevant economic factors" when modifying alimony under section 61.14. Indeed section 61.08(2) specifies that it applies whenever the court is "determining a proper award of alimony" under the statute.[3] We therefore join the Fifth District in holding that all applicable section 61.08(2) factors must be considered in modification proceedings under section 61.14.
While we agree that some of these factors may turn out to be inapt in post-judgment modification proceedings, we note that the legislature has unambiguously required that the trial judge shall consider all relevant factors in determining what alimony is proper.[4] We interpret that command to recognize that some factors may not relate to the actual issues in a given case but the trial court should consider all those that are relevant to the facts and issues. Two of the section 61.08(2) factors seem always relevant in both an original award and any modification:
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each. . . .
(g) All sources of income available to either party.
In this case the trial judge failed to consider these very relevant and important economic factors to determine the amount of any continued alimony under the new circumstances.
For one, the trial judge refused to consider all of Mitzi's investment income. *1224 The record shows that Mitzi has more than $1.9 million in investments, but the trial judge considered only $704,000. He also refused to consider $25,000 in annual income from an IRA account, even though it was available to her without tax penalty. The rationale of the trial judge was that these excluded investments and the IRA account effectually represented segregated sums that should be allowed to grow for her use in later years.
We find this reasoning in conflict with Mallard v. Mallard, 771 So.2d 1138 (Fla.2000), where the court reaffirmed the principle that the purpose of periodic alimony is to provide the needs and necessities of life. More specifically the court held that "[c]urrent necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony." 771 So.2d at 1140. Mallard explicitly rejected the idea that a trial court should increase the amount of alimony by adding an investment (i.e., growth) allowance, disapproving of the holding to that effect in Messina v. Messina, 676 So.2d 483 (Fla. 1st DCA 1996). 771 So.2d at 1141; see also Rosecan v. Springer, 845 So.2d 927, 930 (Fla. 4th DCA 2003) (holding that Mallard bars a court from using alimony to "forge economic equality, without regard to the needs of the recipient spouse"); Pietras v. Pietras, 842 So.2d 956, 962 (Fla. 4th DCA 2003) (holding that alimony may not include a savings component); Lauro v. Lauro, 757 So.2d 523 (Fla. 4th DCA 2000) (equitably distributed income in prior divorce is source of income for purposes of calculating amount of alimony). Property distributed to a spouse in dissolution of marriage, even a pension plan, must be considered a source of income in determining the amount of income available to a spouse seeking alimony. Acker v. Acker, 904 So.2d 384, 388 (Fla. 2005). It was therefore error not to consider Mitzi's entire investment portfolio and IRA income.
Next, in fixing the amount of any need for alimony, the trial judge included in her relevant expenses the annual sums Mitzi spends on behalf of their adult daughter for some expenses while attending college: fuel, clothing, utilities, insurance, recreational expenses, vacation travel, and spending money. According to testimony, these sums amount to $4,000 on a monthly basis.[5] In the final order, the trial judge thought it appropriate to include these sums in assessing Mitzi's needs, saying that this was a modification proceeding rather than an initial determination on alimony in the dissolution final judgment. The court voiced reliance on a principle that "the purposes to which the recipient puts the alimony generally do not support a modification," citing Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987), and Springstead v. Springstead, 717 So.2d 203 (Fla. 5th DCA 1998).[6]
*1225 Apart from the doubtful formulation of the principle he sought to apply, neither case supports the trial judge's decision. Springstead is no help because by the time of the modification hearing the spouse there had stopped cohabiting and the former companion had also reimbursed her for all sums she had given him. Tinsley involved a former agreement between the parties for a specified amount of alimony, which the trial court later reduced in a modification proceeding on account of distributions by the receiving spouse from the alimony to an adult child and a grandchild. In reversing the modification, the court emphasized that a party who seeks to reduce agreed alimony bears a heavy burden that was not sustained in the case. The opinion in Tinsley makes apparent that in spite of the sums the recipient gave to the children, the paying spouse had not shown that her needs had decreased by reason of any other incomethe essential difference in the present case. Section 61.08 makes clear that in determining any need for alimony, whether original or modification, the entire financial resources and income of the party seeking the award must be considered.
It is obvious from the trial judge's written order that he placed considerableeven undueemphasis on the standard of living during the marriage.[7] In effect the judge concluded that even the amount of modified alimony in this case must insure that Mitzi's lifestyle continues at the level achieved during marriage when both shared the same financial resources and income. In other words, his formula was that x divided by 2 must continue to equal x. We think the trial judge erred.
The standard-of-living is not a superfactor in setting the amount of alimony trumping all others. It has only a case specific and quite limited purpose. When the living standard during marriage was significantly high and the payor has the ability to pay more than minimum wage (so to speak), its purpose is to avoid having alimony set at bare subsistence levels. The wealthy plutocrat who exposes a spouse during marriage to a standard well beyond the basic necessaries of life on a meager level, should be required to do better than mere subsistence with alimony.
But, as we made clear in Rosecan: "The purpose of permanent periodic alimony is not to divide future income to establish financial equality." 845 So.2d at 929. Instead it is intended to avoidwhere possiblehaving a recipient pass from the ease and comfort of always having more than enough, to the distress of having only just enough for the essentials of minimum food, shelter and clothing.
After the division of marital assets and other property in this case, Mitzi has a net worth of nearly $2 million, while Craig's is above $3.2 million. Here the standard established during marriage has little relevanceif in fact it has any at allto the amount of any modification because the net worth of the ex-spouse seeking to continue to receive alimony is now considerably above any fear of impoverishment and, prima facie, would appear to amount to more than sufficient financial resources and income to meet her appropriate needs at the appropriate level when all of her financial resources and income are properly considered.
And then there is this. In Bridges v. Bridges, 842 So.2d 983, 984 (Fla. 1st DCA 2003), the court held that when a former *1226 spouse paying alimony has established that the payee is receiving support from an unmarried cohabiting partner, a substantial change in circumstances has been shown, and the burden then shifts to the recipient spouse to show if there is any continued need for alimony. Bridges explained that the burden of proof shifts to the receiving party to justify an amount of alimony because the true economic condition is uniquely within her knowledge and may not be available to the payor. The court followed Lee v. Lee, 544 So.2d 1083 (Fla. 1st DCA 1989), in this holding. In Bridges the ex-wife who was cohabitating with another man failed to meet her burden of showing a continued need for alimony, and thus the ex-husband's request to reduce alimony was granted so that she would thereafter receive $1 per month in permanent alimony. 842 So.2d at 983-84.
We agree with the First District and follow its decisions in this regard. As in Bridges, the facts show that Mitzi also has significant individual resources and her living companion is willing and able to support her (having done so for 10 years). With her own assets of nearly $2 million, plus the additional support afforded by her cohabiting partner, she would now appear to require at best only nominal support to protect her future should she experience any significant adverse change in her circumstances.
On remand the trial court shall allow Mitzi to showif she can do so even with financial resources of nearly $2 million and the significant income and the support of her cohabiting partnerthat she continues to have any real need for alimony. We also deny her request for attorneys fees on this appeal because of her obvious lack of need. See Satter v. Satter, 709 So.2d 617 (Fla. 4th DCA 1998) (where former spouses have respective net worths of $13.3 million and $1.1 million, attorney fees should be denied).
Reversed and Remanded with Instructions.
GUNTHER, J., and KRATHEN, DAVID H., Associate Judge, concur.
NOTES
[1] For prior entries, see Donoff v. Donoff, 777 So.2d 1078 (Fla. 4th DCA 2001), and Donoff v. Donoff, 691 So.2d 1091 (Fla. 4th DCA 1997).
[2] § 61.08(2) Fla. Stat. (2005).
[3] § 61.08(2) Fla. Stat. (2005).
[4] § 61.08(2), Fla. Stat. (2005) ("in determining a proper award of alimony . . . the court shall consider all relevant factors").
[5] Paradoxically, the evidence also showed that the daughter had her own brokerage account with more than $200,000 in it.
[6] Tinsley traced the principle regarding spending to Phillippi v. Phillippi, 148 Fla. 393, 4 So.2d 465 (1941), where the supreme court stated the issue thus: "whether the subsequent alleged extravagance of the divorced wife will support a bill to reduce alimony." 4 So.2d at 466. The issue was whether a payee's extravagant spending of alimony in gambling was by itself grounds to reduce it. Id. The holding in Phillippi was that, by itself, such spending was not a basis to modify the award. 4 So.2d at 466-67. Yet without explanation, Springstead somehow reformulated the Phillippi principle to be this: "As a general rule, how the recipient spouse chooses to spend the alimony is irrelevant [e.s.] in a modification action." 717 So.2d at 204. Springstead thus remade the Phillippi holding into a statement of principle that the purpose to which the alimony is put is irrelevant. That is obviously not the holding in Phillippi. As here, such purposes could be relevant in determining whether the alimony claimant has a need for such assistance.
[7] § 61.08(2)(a), Fla. Stat. (2005).