955 So.2d 35 (2007)
Lawrence LAMBERT, Appellant,
v.
Bernice LAMBERT, Appellee.
No. 3D06-1445.
District Court of Appeal of Florida, Third District.
March 14, 2007.
Rehearing Denied May 9, 2007.
*36 Fred G. Prichason, North Miami Beach, for appellant.
Stephen H. Butter, Miami, for appellee.
Before GERSTEN, CORTIÑAS, and ROTHENBERG, JJ.
CORTIÑAS, Judge.
Lawrence Lambert ("Former Husband") appeals a final judgment of dissolution of marriage that awarded Bernice Lambert *37 ("Former Wife") permanent periodic alimony of $1,500 per month.[1] We reverse.
It is evident from the record that during their twenty-seven (27) year marriage the parties enjoyed a very modest lifestyle. Since their marriage in 1978, they lived in a two-bedroom, two-bathroom home in Miami, Florida. Since 1980, the Former Wife has been a clerk at Mount Sinai Medical Center. She testified that she presently earns $739 bi-weekly; however, her financial affidavit reflects that she earns a monthly net income of $1,837 per month. The Former Husband's financial affidavit reflects that he earns a monthly net income of $2,171.92 from his employment at the postal service. Additionally, the Former Husband testified that he earns $400 per month from a small cleaning business he has operated for approximately seven years.
After the parties separated in October 2004, the Former Husband voluntarily paid the Former Wife $1,500 per month from January 2005 until March 2006. The uncontroverted evidence in the record shows that the Former Husband made these voluntary payments to the Former Wife during their separation to cover the mortgage, property taxes, and insurance of the former marital residence. The funds utilized to make these payments were insurance proceeds from the death of the Former Husband's son, which have been exhausted.
In April 2006, the parties entered into a Partial Mediated Settlement Agreement ("Agreement"). The Agreement equitably distributed all of the parties' assets and liabilities and resulted in the distribution of the marital residence to the Former Wife. The Agreement resolved most of the financial issues between the parties by stipulation; however, the parties could not agree on the issue of alimony.
Thereafter, the trial court conducted a final hearing to resolve the alimony dispute. At the conclusion of the hearing, the trial court entered a final judgment that incorporated the parties' Agreement as to the distribution of the assets. In addition, the court awarded the Former Wife permanent periodic alimony in the amount of $1,500 per month. Specifically, the trial court found that (1) this was a long term marriage, (2) the Former Husband has greater income capacity than the Former Wife, (3) the Former Wife has a permanent periodic need for alimony, and (4) the Former Husband voluntarily paid the Former Wife $1,500 per month since October 2004. We review whether the trial court abused its discretion in awarding $1,500 per month in permanent periodic alimony. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980).
On appeal, the Former Husband argues that the trial court abused its discretion in awarding permanent periodic alimony that he is unable to pay. Although we are satisfied that the Former Wife has established a need for permanent alimony, we find that the award of permanent alimony in this case is clearly excessive insofar as it will consume approximately sixty percent (60%) of the Former Husband's net monthly income and will leave the Former Husband with approximately $1,000 per month for his sustenance. See Squindo v. Osuna-Squindo, 943 So.2d 232, 234 (Fla. 3d DCA 2006) (reversing permanent alimony award which consumed approximately seventy percent (70%) of husband's net monthly income and left former husband with $600 per month); Blum v. *38 Blum, 382 So.2d 52, 55 (Fla. 3d DCA 1980) (reversing permanent alimony award that left former husband with $200 per month); Sokol v. Sokol, 441 So.2d 682, 685 (Fla. 2d DCA 1983) (where permanent alimony award which amounted to seventy one percent (71%) of take home pay constituted an abuse of discretion).
"The purpose of permanent periodic alimony is not to divide future income to establish financial equality" between the parties. Donoff v. Donoff, 940 So.2d 1221, 1225 (Fla. 4th DCA 2006) (quoting Rosecan v. Springer, 845 So.2d 927, 929 (Fla. 4th DCA 2003)). The purpose of alimony is to avoid, where possible, having a former spouse "pass from the ease and comfort of always having more than enough, to the distress of having only just enough for the essentials of minimum food, shelter and clothing." Id. "The standard of living is not a super-factor in setting the amount of the alimony-trumping all others." Id. Instead, the trial court should consider all the relevant factors set forth in section 61.08(2), Florida Statutes (2005), including the financial resources of each party and all sources of income available to either party. Id. at 1223; see § 61.08(2)(d), (g), Fla. Stat. (2005). Therefore, in determining the amount of permanent periodic alimony, the trial court must not only consider the lifestyle achieved during the marriage, but must also consider the needs of the spouse requesting alimony and the ability of the other spouse to make alimony payments. See Donoff, 940 So.2d at 1225; Rosecan, 845 So.2d at 928.
Here, it is evident from the record that the trial court erroneously placed undue emphasis on the standard of living during the marriage when the Former Husband and the Former Wife shared their financial resources and income. The trial court incorrectly tried to achieve financial equality between the parties and, in so doing, set the prior standard of living as a supreme factor in setting the amount of alimony. Notably, this is not a situation where the Former Wife was exposed during the marriage to a standard well beyond basic necessities and would subsequently have just enough for the essentials of food, shelter, and clothing. On the contrary, the record shows that both parties had a very modest lifestyle from the time they wed in 1978 to the time of divorce. Additionally, in determining the amount of alimony, the trial court emphasized that the Former Husband earned a greater monthly income than the Former Wife. While this is true, the disparity in income is relatively small. This is not a case where one party enjoys a far superior standard of living than the other. Instead, this case involves two individuals with barely enough income to meet basic household expenses.
We recognize that it will be difficult for both parties to maintain a lifestyle identical to that lifestyle when they were married; however, we must balance the standard of living as well as the Former Wife's needs with the Former Husband's ability to pay permanent periodic alimony. See Donoff, 940 So.2d at 1225; Rosecan, 845 So.2d at 928. Here, there is no basis in the record to reasonably expect that the Former Husband could pay over sixty percent (60%) of his income to his Former Wife while having only $1,000 per month for his own sustenance. Accordingly, we hold that the trial court erred in awarding alimony in an amount that exceeded the Former Husband's ability to pay. At most, the facts of this case support an award of permanent periodic alimony of $500 per month.
We are compelled to briefly address the Former Wife's contention, and the trial court's finding that because the Former Husband made voluntarily payments *39 to the Former Wife during the separation, he recognized her need for alimony and his ability to pay. The Former Wife erroneously relies on our decision in Vickers v. Vickers, 413 So.2d 788, 789-90 (Fla. 3d DCA 1982), where we found that the former husband's voluntary post-separation payments to the former wife conclusively established that the amount was within the former husband's ability to pay and satisfied her needs. The facts in Vickers are clearly inapplicable to the case before us. In Vickers, the trial court determined whether to continue temporary alimony pending the final hearing on the financial aspects of the dissolution. Id. at 790 n. 1. In fact, we instructed the trial court to credit the former husband, after the final hearing and post dissolution of the assets, with half of the voluntary payments that were used by the former wife to pay the mortgage of the marital residence. Id. at 790 n. 2. Here, unlike the trial court in Vickers, the trial court was faced with the issue of whether to award permanent periodic alimony after equitable distribution of all the parties' assets and liabilities. The Former Husband's uncontradicted testimony at the final hearing was that he made voluntary payments to the Former Wife to stay current of the mortgage payments and taxes of the marital residence, which was ultimately distributed to the Former Wife in the final judgment. Furthermore, the Former Husband testified that the funds used to make these payments were insurance proceeds from the death of his son, which have been exhausted. Here, the Former Husband's voluntary payments to the Former Wife during separation were not dispositive in determining his ability to pay. Consequently, the trial court improperly applied our holding in Vickers to support its finding that the Former Husband had the ability to make permanent periodic alimony payments of $1,500 per month.
We find the trial court abused its discretion in awarding permanent periodic alimony in the amount of $1,500 per month. Thus, we reverse the order below and remand the cause with directions that the trial court shall require the Former Husband to pay $500 per month in permanent periodic alimony.
Reversed and remanded with directions.
NOTES
[1] The trial court's order requires the Former Husband to pay the Former Wife "$750 two times monthly . . . and payable bi-weekly."