953 So.2d 632 (2007)
Keith R. WOLFE, Appellant,
v.
Nancy B. WOLFE, Appellee.
No. 4D05-3527.
District Court of Appeal of Florida, Fourth District.
March 28, 2007.
Rehearing Denied May 8, 2007.
*633 Edna L. Caruso of Edna L. Caruso, P.A., and Jay R. Jacknin of Christiansen & Jacknin, Lawyers, West Palm Beach, for appellant.
Cynthia L. Greene of Law Offices of Greene Smith McMillan, P.A., Miami and Law Offices of Sara Blumberg, P.A., Boynton Beach, for appellee.
WARNER, J.
The former husband appeals the trial court's denial of his petition for modification of his alimony obligation to the former wife, where the former wife's expenses had decreased significantly because of the sale of the marital home. We conclude that the trial court erred in failing to reduce the alimony and reverse.
The parties were divorced in 2002 after twenty-four years of marriage. In the final judgment of dissolution, the court determined that the husband had a substantial monthly income of around $26,000 from his dental practice. Both parties agreed that the wife would need permanent alimony. However, because the parties were selling the marital home, the husband argued that the wife's expenses would be reduced once the sale was complete. He proposed some bridge-the-gap alimony until the house was sold. Nevertheless, the court declined to speculate on the wife's future expenses after the sale of the home. It did not want to place the wife in a position of having to seek modification should the projected decline of future expenses not come to fruition. The court then awarded the wife $13,000 per month in permanent alimony. That award was based upon the wife assuming all of the expenses of the marital home. The court also ordered the sale of the marital home. In all, each party received approximately $2,000,000 in marital assets. The husband appealed the final judgment, and we affirmed. See Wolfe v. Wolfe, 864 So.2d 1229 (Fla. 4th DCA 2004).
Within a year of this court's decision, the former husband filed a petition for modification of alimony. In his petition, the former husband claimed that subsequent to the entry of the final judgment, a substantial and permanent change of circumstances occurred in that his income was far less than his net monthly earnings contemplated in the final judgment. Additionally, since the entry of the parties' final judgment, the former wife sold the parties' former marital home, which was a significant basis in determining the amount of alimony to award to the former wife. She purchased a smaller residence, decreasing her needs.
When the parties sold the marital home, the former wife received $370,000. From her share of the sale proceeds, she put about $100,000 into the new home and put about $270,000 into a money market fund. Although the marital home carried a thirty-year mortgage with a balance at sale of *634 $220,000, the wife financed $320,000 of her new residence with a fifteen-year mortgage, making the mortgage payments approximately the same as the mortgage on the marital home. Had she kept the same size mortgage ($220,000) and amortization of thirty years, her payments would be $1,200 instead of $2,500 per month. Instead, she invested the remaining $270,000 from the sale of the home. In all, she had an investment account of approximately $1,000,000 and a retirement account of $650,000. Her investment return on the $1,000,000 was less than two-percent.
The former wife's financial affidavit, her expert's analysis of her needs, and the former husband's expert's analysis of her needs are all in conflict as to what the former wife's expenses are, both as to amount and category. However, her current expenses included categories of items not included in the calculation of alimony at trial. These include expenses for the parties' adult son, a substantial catchall of "spending money," a long-term care contract, and a prepaid funeral contract, both contracts purchased after the divorce.
The trial court denied the petition for modification. It concluded that the former husband had not proved that he had a significant and permanent reduction in income. As to the former wife's expenses, the court refused to consider the sale of the marital home as a reason for modification, because it was contemplated in the final judgment. It further found that the former husband's claim that the former wife's needs have decreased should fail because generally the purposes to which a spouse puts the alimony award do not support a modification of the award, citing Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987). It therefore denied the petition for modification. The former husband appeals.
A reduction in alimony can be based either on the decreased income of one party or the decreased needs of the other party. See § 61.14(1), Fla. Stat.; Antepenko v. Antepenko, 824 So.2d 214 (Fla. 2d DCA 2002). Here, the former husband tried to prove both. As to the former husband's claim of decreased income, even the former wife's expert's calculations show a modest decrease in the former husband's income. Nevertheless, having evaluated the testimony regarding the former husband's income loss, including the expert testimony and the trial court's credibility determinations, we cannot say that the trial court abused its discretion in concluding that the former husband has not suffered a significant, involuntary reduction in income.
The trial court did not consider the sale of the marital home in determining whether the former wife's expenses had decreased, because it viewed the sale as contemplated in the original final judgment, citing Ashburn v. Ashburn, 350 So.2d 1158 (Fla. 2d DCA 1977). The trial court was thus attempting to apply the general rule that in order to obtain a modification, a party seeking modification of an alimony award must show: (1) a substantial change in circumstances since the date of the final judgment; (2) that the change was not contemplated at the time of the final judgment; and (3) that the change is sufficient, material, involuntary, and permanent in nature. Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992). In interpreting this general rule, we recently said:
[M]odification may not be based upon factors affecting income known to the parties at the time a final judgment is entered. . . . "The reason for this doctrine is an obvious one: if the likelihood of a particular occurrence was one of the factors which the court or the parties considered in initially fixing the award *635 in question, it would be grossly unfair subsequently to change the result simply because the anticipated event has come to pass."
Mendes v. Mendes, 947 So.2d 450, 452 (Fla. 4th DCA 2006) (quoting Jaffee v. Jaffee, 394 So.2d 443, 445 (Fla. 3d DCA 1981)) (emphasis added).
In setting the award of alimony in the initial final judgment in this case, the trial court refused to consider the likely reduction of the wife's expenses once the marital home was sold. The court found that "speculation as to the wife's future expenses are inappropriate at this juncture." While the husband argued that the wife would only need "bridge-the-gap" alimony until the house was sold and then a lesser amount of permanent alimony, the court felt that following the husband's plan would shift the burden of proof to the wife in any modification proceeding if the anticipated future event, i.e., the sale of the home and purchase of another home, did not meet the future projections. Because the former wife's needs after obtaining her new residence were not considered in the fixing of the award, we conclude that the court erred in failing to consider the sale of the marital home and the related reduction of expenses as a ground for modification.
The former wife argues that her mortgage and other expenses are approximately the same for her new residence, so no decrease in alimony is in order. The only reason her expenses are not substantially less is because of the former wife's financial decisions at the time of the sale of the marital home. Instead of applying the proceeds of the sale of the marital home to her new home, she invested most of them. In addition, she obtained a mortgage with a fifteen-year amortization, instead of a thirty-year amortization like the mortgage on the marital home. This nearly doubled her monthly payment.
We agree with the former husband that the court erred in failing to consider the sale of the marital home and the change in the former wife's circumstances. From the sale of the marital home coupled with a small portion of her share of other marital assets, the former wife could have paid for her new residence outright with no mortgage obligation, or she could have obtained a mortgage in line with the pre-divorce amortization of thirty years. Instead, she chose a fifteen-year amortization, so the alimony payments would completely pay for the home by the time the former husband reaches retirement. Thus, by structuring the mortgage in the way she did, the former wife not only receives the equitable share of the former residence as an asset, but also increases her assets by using the former husband's alimony payment to fully pay for her second residence within a short period of time. This is similar to having a prohibited "savings component" in alimony. See Mallard v. Mallard, 771 So.2d 1138, 1140 (Fla.2000) ("Current necessary support rather than the accumulation of capital is the purpose of permanent periodic alimony."). The former husband has no obligation to increase the former wife's assets post-dissolution. Id.
With respect to her other current expenses, some of the expenses included on her subsequent affidavit were not part of the expenses upon which the standard of living was determined at the time of divorce. The trial court refused to consider this issue, citing Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987), for the proposition that the purposes to which a spouse puts the alimony award generally do not support a modification of the award.
We recently addressed Tinsley in Donoff v. Donoff, 940 So.2d 1221 (Fla. *636 4th DCA 2006). There, the former husband challenged a trial court's order reducing alimony, because the court used an improper analysis in determining the size of the reduction. We held that all applicable section 61.08(2) factors in determining alimony must be considered in modification proceedings under section 61.14. Id. at 1224. We then looked at some of the expenses that the former wife included in her spending, such as $4,000 per month on her adult daughter. The trial court in Donoff had relied on Tinsley in refusing to consider what the former wife spent her money on in determining a modification of alimony. In his opinion, Judge Farmer noted:
The court voiced reliance on a principle that "the purposes to which the recipient puts the alimony generally do not support a modification," citing Tinsley v. Tinsley, 502 So.2d 997 (Fla. 2d DCA 1987), and Springstead v. Springstead, 717 So.2d 203 (Fla. 5th DCA 1998).6
Apart from the doubtful formulation of the principle he sought to apply, neither case supports the trial judge's decision. Springstead is no help because by the time of the modification hearing the spouse there had stopped cohabiting and the former companion had also reimbursed her for all sums she had given him. Tinsley involved a former agreement between the parties for a specified amount of alimony, which the trial court later reduced in a modification proceeding on account of distributions by the receiving spouse from the alimony to an adult child and a grandchild. In reversing the modification, the court emphasized that a party who seeks to reduce agreed alimony bears a heavy burden that was not sustained in the case. The opinion in Tinsley makes apparent that in spite of the sums the recipient gave to the children, the paying spouse had not shown that her needs had decreased by reason of any other income-the essential difference in the present case. Section 61.08 makes clear that in determining any need for alimony, whether original or modification, the entire financial resources and income of the party seeking the award must be considered.
6 Tinsley traced the principle regarding spending to Phillippi v. Phillippi, 148 Fla. 393, 4 So.2d 465 (1941), where the supreme court stated the issue thus: "whether the subsequent alleged extravagance of the divorced wife will support a bill to reduce alimony." 4 So.2d at 466. The issue was whether a payee's extravagant spending of alimony in gambling was by itself grounds to reduce it. Id. The holding in Phillippi was that, by itself, such spending was not a basis to modify the award. 4 So.2d at 466-67. Yet without explanation, Springstead somehow reformulated the Phillippi principle to be this: "As a general rule, how the recipient spouse chooses to spend the alimony is irrelevant [e.s.] in a modification action." 717 So.2d at 204. Springstead thus remade the Phillippi holding into a statement of principle that the purpose to which the alimony is put is irrelevant. That is obviously not the holding in Phillippi. As here, such purposes could be relevant in determining whether the alimony claimant has a need for such assistance.
Id. at 1224-25 (emphasis in original). Tinsley thus does not stand for the proposition that on modification no review of the receiving spouse's spending should be made. The inquiry is still the needs of the spouse based upon the marital standard of living of the parties. The former wife's ability to contribute to her own support through the division of marital assets must also be considered. Id. The trial court failed to consider either her needs or the reasonable amount of income which could be generated from her considerable assets for her support.
In particular, the expenses that the former wife spends for her adult son are not properly included in her needs evaluation for purposes of alimony. A parent *637 has no legal obligation to provide post-majority support for a child and cannot be compelled to support an adult child indirectly through the payment of alimony. Grapin v. Grapin, 450 So.2d 853 (Fla. 1984). The pre-paid funeral expense is also not properly calculated as part of the former wife's needs for purposes of the alimony calculation. Although the parties did plan for their demise through the purchase of cemetery lots during the marriage, these were equitably distributed to both of them at the time of the divorce. This new contract is not an expense which was part of the standard of living as calculated at the time of the final judgment of divorce. The former husband would be paying twice for his former wife's burial expenses should he be compelled to pay an alimony award which includes these expenses as a need of the former wife.
Similarly, the contract for longterm care included in the former wife's accountant expert's analysis of her needs should not be included as part of her expenses. The former husband pays for her support and will be obligated to pay if she requires long-term care. Further, the former wife's award of alimony is secured against the former husband's demise by a $1,000,000 life insurance policy. Therefore, the former husband is already paying for the former wife's continued care throughout her lifetime. In addition, the wife has $2,000,000 in assets upon which to rely.
Other expenses such as unallocated "spending money" which the former wife's expert lists in one report as high as $49,395 per year were not specifically calculated in the original standard of living, and it appears that in some categories the former wife is spending far more than what was included in the standard of living of the parties at the time of the divorce. Some additional expense may be required as a result of inflation or other factors, but, relying on Tinsley, the trial court did not make any findings of fact on these issues.
Having determined that under the facts of this case the trial court erred in refusing to consider the sale of the marital home and the resulting decrease in expenses to the former wife as a circumstance warranting consideration of modification in alimony, we reverse. As in Donoff, we remand for a reconsideration of the former wife's needs and her ability to contribute to those needs, in accordance with this opinion.
Reversed and remanded.
POLEN and GROSS, JJ., concur.