# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-3224
_____

STEVEN DOUGLAS GRABLE, II,

    Appellant,

    v.

MELISSA GRABLE,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Anthony B. Miller, Judge.

February 11, 2026

PER CURIAM.

Appellant Steven Grable (the "Husband") appeals the equitable distribution of marital assets and the award of alimony to Appellee Melissa Grable (the "Wife"). We affirm in part, reverse in part, and remand for further proceedings.

I.

In this case, the Husband and Wife were married for 24 years and have two adult children. Prior to the final hearing, the Wife filed an updated financial affidavit showing a monthly budget deficit of $2,714.20, based on an annual salary of $43,103.58 less various expenses. Relevant to this appeal are her monthly expenses for house repairs, automobile repairs, and health insurance for the adult children. The Husband claims that the trial

court abused its discretion by accepting the full amounts in her affidavit for these expenses, as well as by adding $285.80 per month for further "anticipated and unanticipated" expenses related to the house, thereby awarding her $3,000 total per month in durational alimony for 18 years (216 months).

The Husband also challenges the trial court's acceptance of her annual salary in the affidavit, considering she admitted that her salary had increased during the course of the final hearing (which was continued twice over a seven-month span). By the final day of the hearing, the Wife admitted that her annual salary had increased to around $46,456—roughly $3,350 more. Nevertheless, the trial court calculated alimony based on the lower salary in her affidavit.

Finally, the Husband appeals the trial court's equitable distribution, which he "receives" by not paying alimony during the final three years of the alimony award. In short, the trial court, after accounting for the Wife's retention of the house and evenly dividing the retirement accounts, concluded that the Wife owed the Husband an equalizer payment of $103,157.97. To accomplish this equalizer payment, the trial court reduced the duration of the Husband's alimony obligation by 34 months, from 216 months to 182 months. (At $3,000 each month, this reduction totals $102,000.) The final alimony payment, in the 182nd month, would also be reduced by $1,157.97, providing a total equalizer "payment" of $103,157.97. Under this revised alimony schedule, the final alimony payment, and the first credit or offset toward the equalizer payment, would occur shortly after 15 years.

The Husband timely filed this appeal.

II.

This Court reviews a trial court's rulings on equitable distribution and alimony for an abuse of discretion. *Briggs v. Briggs*, 336 So. 3d 1286, 1288 (Fla. 1st DCA 2022); *Abbott v. Abbott*, 187 So. 3d 326, 327 (Fla. 1st DCA 2016).

A.     Equitable Distribution

2

The Husband argues that the trial court abused its discretion by delaying the Wife's equalizer payment to him by more than 15 years as an offset of his final alimony payments. The Wife responds that the alimony offset was "the most reasonable approach."

In 1988, the Legislature created the equitable distribution statute, section 61.075. Ch. 88-98, § 1, Laws of Fla. (codified at § 61.075, Fla. Stat. (1989)); *Acker v. Acker*, 904 So. 2d 384, 387 (Fla. 2005). It states that a court "may provide for equitable distribution of the marital assets and liabilities without regard to alimony for either party," and further instructs that "a judgment for alimony" should be considered only "[a]fter the determination of an equitable distribution." § 61.075(9), Fla. Stat. (2023). Accordingly, "the trial court is first to do the equitable distribution of assets, and once the assets have been equitably distributed, make a determination whether alimony should be awarded." *Acker v. Acker*, 821 So. 2d 1088, 1092 (Fla. 3d DCA 2002), *approved*, 904 So. 2d 384 (Fla. 2005). Thus, the equitable distribution statute gives priority to the equitable distribution over an alimony award.

The statute also allows a trial court to effectuate the equitable distribution by "order[ing] a monetary payment in a lump sum or in installments paid over a fixed period of time." § 61.075(10)(a), Fla. Stat. (2023). But any such monetary payment "shall vest when the judgment is awarded." § 61.075(2), Fla. Stat. (2023). Moreover, the "award shall not terminate upon remarriage or death of either party, unless otherwise agreed to by the parties, but shall be treated as a debt owed from the obligor or the obligor's estate to the obligee or the obligee's estate, unless otherwise agreed to by the parties." *Id.*

Here, the trial court's equitable distribution in the form of an offset of alimony payments does not comply with these statutory mandates. First, the $103,157.97 offset is only fully realized by the Husband if alimony continues, unchanged, for 18 years. Thus, the distribution is dependent on the continuation of alimony; it does not take priority over alimony, as required. § 61.075(9), Fla. Stat. (2023).

Second, by being dependent on alimony, the distribution is at risk of being reduced or eliminated. For example, the Husband would not receive his full equitable distribution if alimony is

3

terminated by either party's death or by her remarriage prior to the completion of the 18-year duration. *See* § 61.08(8)(a), Fla. Stat. (2023) (stating that durational alimony terminates upon the death of either party or upon the remarriage of the obligee). Alimony could also be reduced based on changed circumstances. *Id.* This would then reduce the Husband's equitable distribution. As a result of these possibilities, the equitable distribution award of $103,157.97 as an offset against future alimony payments does not "vest" immediately upon the judgment, as required. § 61.075(2), Fla. Stat. (2023). It was therefore an abuse of discretion for the trial court to fashion the equitable distribution to the Husband as non-payments of his alimony obligation, which are subject to modification or termination and therefore might never be realized. *Cf. Gudur v. Gudur*, 277 So. 3d 687, 691 (Fla. 2d DCA 2019) (finding an abuse of discretion where the trial court's equitable distribution to the former husband was contingent on the liquidation of the former wife's business interest which might not happen "during his lifetime"). We hereby reverse and remand this issue to the trial court to devise a new equitable distribution consistent with the above statutory provisions.

### B.    Alimony

The party seeking alimony has the burden of proving his or her need for it, and the trial court must make factual determinations about such need. § 61.08(2)(a), Fla. Stat. (2023). An award of alimony will not be disturbed on appeal if it is supported by competent, substantial evidence. *Pflanz v. Pflanz*, 332 So. 3d 1044, 1048 (Fla. 1st DCA 2021).

#### i.    Home Repairs and Maintenance

The Wife's financial affidavit showed an expense of $383.00 per month for household "repairs and maintenance." The Wife testified and explained the need for a new roof, new A/C units, and a shower repair and the estimated costs of each. She even introduced pictures in support of her need for repairs, an insurance letter requiring the new roof, and a written roof estimate. To reach her estimate, she took the costs of these expected repairs and divided the total by 5 years (or 60 months).

4

"As a general rule, trial courts may not consider future or anticipated events in setting current alimony and child support amounts due to the lack of an evidentiary basis or the uncertainty surrounding such future events." *Nelson v. Nelson*, 651 So. 2d 1252, 1254 (Fla. 1st DCA 1995); *see also Rhoden v. Rhoden*, 295 So. 3d 864, 868 (Fla. 1st DCA 2020) ("Alimony should be based on 'current existing circumstances, and not on possibilities.'" (quoting *Hedden v. Hedden*, 240 So. 3d 148, 151 (Fla. 5th DCA 2018))). But future needs and events that are "well-documented in the record" may be considered. *Nelson*, 651 So. 2d at 1255.

Here, the Wife did not simply anticipate a need for future repairs. She substantiated each current need with testimony and documentation. Because it was reasonable for the trial court to accept the Wife's overall estimate of her monthly expenses toward home repairs based on the above evidence, we conclude that the trial court's award of $383.00 per month was not an abuse of discretion. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (an action by the trial court is not an abuse of discretion if "reasonable men could differ as to the propriety of the action"). We therefore affirm this part of the alimony award.

ii. Automobile Repairs

Similarly, the Wife's financial affidavit showed a monthly expense of $398.78 for automobile "repairs." She testified to the recent repairs to the catalytic converters, the starter, and the rear hatch of her 2012 vehicle. To pay for them, the Wife had withdrawn $4,521.00 from the parties' Northwestern Mutual bank account and accepted money from her parents. She further described other repairs her car needed with respect to her paint job, passenger side mirror, and door locks. To calculate her total need of $398.78 per month in car repairs, the Wife testified that she "took three years' worth of repairs done to the vehicle" and added the estimated repair for the passenger side mirror, before dividing it into a monthly amount.

Once again, the Wife did not simply anticipate a need for future repairs. She substantiated her monthly budget estimate with testimony of actual repairs. Because it was reasonable for the trial court to accept the Wife's estimate of her monthly expenses toward automobile repairs based on the above testimony and

5

evidence, we conclude that the trial court's award of $398.78 per month was not an abuse of discretion. We therefore affirm this part of the alimony award.

iii.     Health Insurance for the Adult Children

Next, the Husband challenges the trial court's acceptance of the Wife's monthly expense for their adult children's health insurance premiums.

In general, Chapter 61 concerns itself with the protection of, and provision for, the former spouses' minor children. *See, e.g.*, § 61.046(14), Fla. Stat. (2023) (defining "parenting plan" as the means to govern the parental relationships with the "minor child"); § 61.052(2)–(3), Fla. Stat. (2023) (authorizing courts to consider the support and best interests of the "minor child"); § 61.13, Fla. Stat. (2023) (generally providing for child support until the age of 18 and requiring a time-sharing schedule for the "minor child"); § 61.29(1)(a), Fla. Stat. (2023) ("Each parent has a fundamental obligation to support his or her minor or legally dependent child."). Even the statutory requirement for health insurance as part of child support is limited to "health insurance for the minor child." § 61.13(1)(b), Fla. Stat. (2023). Only when an adult child is "dependent" by being "incapable of self-support as a result of a physical or mental incapacity that began before the person reached the age of 18" does Chapter 61 authorize the obligation of support. § 61.1255, Fla. Stat. (2023). Thus, the needs of an adult, independent child are not provided by Chapter 61 obligations.

Florida courts—including this Court—have routinely concluded the same. *See, e.g.*, *Dennis v. Dennis*, 184 So. 3d 656, 656 n.* (Fla. 1st DCA 2016) (concluding that the former wife's support of the parties' adult children is an improper consideration in determining a need for alimony); *Schwab*, 864 So. 2d at 84 (concluding that the expenses of the parties' adult children, who did not need support, cannot be included when determining the former wife's need); *see also Smith v. Smith*, 320 So. 3d 971 (Fla. 5th DCA 2021) (concluding that expenses associated with an adult child are not properly included or considered in awarding alimony); *Kunsman v. Wall*, 125 So. 3d 868, 870 (Fla. 4th DCA 2013) (same); *Quinones v. Quinones*, 84 So. 3d 1101, 1104 (Fla. 3d DCA 2012) (same); *Coniglio v. Coniglio*, 969 So. 2d 579, 580–81

6

(Fla. 4th DCA 2007) (same). After all, "a parent has no legal obligation to provide post-majority support for a child and cannot be compelled to support an adult child indirectly through the payment of alimony." *Dennis*, 184 So. 3d at 656 n.1 (quoting *Wolfe v. Wolfe,* 953 So. 2d 632, 636–37 (Fla. 4th DCA 2007)); *see also Rey v. Rey*, 598 So. 2d 141, 145 (Fla. 5th DCA 1992) ("There is no legal obligation to support the non-dependent adult children of the parties.").

While the Wife's intent to cover the adult children's health insurance premiums is "honorable," *Rey*, 598 So. 2d at 145, the trial court erred by including such amount in the Wife's need. After all, the trial court expressly ruled that the children are "living independently." We therefore reverse the trial court's award of $130.00 per month based on the erroneous inclusion of the adult children's health insurance premiums within the Wife's need calculation.

### iv. Additional House Maintenance

Although the trial court accepted the Wife's entire financial affidavit showing a monthly need of $2,714.20, it awarded a total of $3,000.00 per month in alimony. It based the additional $285.80 on "anticipated and unanticipated" expenses related to the house—"property taxes, homeowner dues, electricity, water, garbage, sewage, repairs, yard maintenance, pest control, etc."

The problem with the trial court's total award is that the expenses it used to justify the additional $285.80 per month were already included in the Wife's financial affidavit. As a result, the trial court duplicated these expenses for purposes of the Wife's need, which is an abuse of discretion. *See Lin v. Lin,* 37 So. 3d 941, 942 (Fla. 2d DCA 2010) (holding that an award of alimony that includes amounts for expenses that have already been accounted for constitutes an impermissible double-counting of those expenses). In other words, there was no competent, substantial evidence to support the additional $285.80 the trial court awarded to the Wife. *See Johnson v. Johnson,* 297 So. 3d 700, 703 (Fla. 1st DCA 2020) (reversing a $2,000 per month award of alimony where the record showed a need of, at most, $1,171 per month). Accordingly, we reverse the trial court's award in the monthly

amount of $285.80 based on its addition of expenses that were already accounted for in the Wife's affidavit.

### v. The Wife's Income

Finally, the Husband appeals the trial court's failure to account for the Wife's increased salary. The trial court relied on the Wife's financial affidavit showing an annual gross income of $43,103.58, as well as pay stubs corroborating that amount. Her testimony even supported that amount at the beginning of the final hearing, on November 20, 2023. But on the final day of the hearing—July 8, 2024—she testified that her gross income had increased to around $46,456.00.

For the trial court to disregard the Wife's concession during the final hearing that her income was higher than listed on her affidavit was an abuse of discretion. *See Pflanz*, 332 So. 3d at 1049 (the trial court abused its discretion by using "outdated" information that conflicted with the former wife's testimony). No factfinder could reasonably conclude that the Wife's gross annual income was still $43,103.58 for alimony purposes, when she testified about her recent salary increases that brought her gross income to around $46,456.00. Accordingly, we reverse the trial court's finding of the Wife's gross income as $43,103.58 and remand for a factual determination of her gross and net income at the conclusion of the final hearing. The Wife retains the burden of proof. § 61.08(2)(a), Fla. Stat. (2023).

### III.

In sum, we reverse the portions of the final judgment regarding the Husband's equitable distribution, the Wife's expense of health insurance for the adult children, the Wife's duplicated expenses for house maintenance, and the Wife's outdated income, and remand for further proceedings consistent with this opinion. In all other respects, we affirm the final judgment.[*]

---

[*] Judge M.K. Thomas was substituted for an original panel member after oral argument. She reviewed the parties' briefs, the record, and recording of the oral argument.

8

AFFIRMED in part, REVERSED in part, and REMANDED.

RAY, KELSEY, and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Diane G. DeWolf and Nancy Mason Wallace of Akerman LLP, Tallahassee, for Appellant.

Max Galen Factor and Eric D. Schab of Max Factor Attorney At Law, P.A., Tallahassee, for Appellee.